Hiram H. Graybill, to use of John D. Brubaker, v. Penn Township Mutual Fire Insurance Association of Lancaster County, Appellant.

*Fire insurance—Construction of policy—"Contents."*

The word "contents" in a policy of fire insurance is not a certain and definite description of any particular class of goods, and its meaning must be ascertained by considering the nature and methods of the business for which the building whose contents were insured was to be used, and the understanding and intentions of the parties as expressed at the time the insurance was contracted, and evidence to that effect and for that purpose may be given at the trial of a suit to recover a loss on the policy.

When the "contents" insured are destroyed outside of the building, plaintiff's right to recover depends on whether the purpose of the removal was such as to detach the goods permanently from the building, and create a new or an increased hazard not contemplated when the contract for insurance was made.

Plaintiff insured a barn and butcher shop as one building for four hun-

dred dollars, and the contents for four hundred dollars more.  He insured a smoke house for five dollars, and its contents for five hundred dollars. The barn and butcher shop were burned with their contents.  The smoke house was not burned, but its contents, which had been removed to a storage room in one end of the butcher shop, were wholly consumed. Plaintiff claimed to recover thirteen hundred dollars, and testified that at the time the policy was being prepared by the president of the insurance company, it was understood by him and the president that the cured meat in the butcher shop was to be included in the insurance of the " contents " of the smoke house.  *Held,* that it was not error for the court to charge that if such was the understanding between the parties, plaintiff was entitled to recover.

Such a case does not involve an attempt to reform a written contract, but to determine its meaning and extent.  The rule in equity governing the reformation of contracts is not therefore applicable to it, and the jury is at liberty to determine the question by preponderance of the evidence.

Argued May 20, 1895.  Appeal, No. 207, Jan. T., 1895, by defendant, from judgment of C. P. Lancaster Co., Oct. T., 1890, No. 71, on verdict for plaintiff.  Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Assumpsit on a policy of fire insurance.

At the trial it appeared that plaintiff's property was insured in the following words :

| " Two story house Att, | | | | | | $1,200 | 00 |
|---|---|---|---|---|---|---|---|
| Contents, | | | | | | 500 | 00 |
| Wood house, | | | | | | 20 | 00 |
| Ground barn, Att. ⎱ Butcher shop, Att. ⎰ | | | | | | 400 | 00 |
| Contents, | | | | | | 400 | 00 |
| Smoke house, | | | | | | 5 | 00 |
| Contents, | | | | | | 500 | 00 " |

The ground barn and attachment and butcher shop and attachment were destroyed by fire.  At the time of the fire a quantity of smoked meat which had been removed from the smoke house was stored in the butcher shop, and was consumed.

The plaintiff testified that the president of the insurance company, Jacob Hershey, came to his place, saw his buildings, including the barn, butcher shop and smoke house, 8×7 feet in dimensions.  He had pointed out to him the meat, of which " a couple of pieces " were then in the smoke house, and the

balance, consisting of two tons of bologna sausages, eighteen or twenty hams, shoulders, flitch, etc., were in the meat room, two feet distant; that he told Hershey that he wanted the meat insured, "not the smoke house, because it would not hold that much. I had a separate room for smoking and would move it there," that the meat was accordingly insured as "contents" of the smoke house. Mr. Hershey denied that there was such a consideration or understanding as to the insurance of the "contents" of the smoke house.

Defendant's points were as follows :

"1. That by the terms of the policy the properties of the plaintiff were insured in the following words, viz : 'Two-story house attachment $1,200, contents $500, wood-house $20.00, ground barn attachment, butcher shop attachment $400, contents $400, smoke-house $5.00, contents $500 ;' and that the uncontradicted evidence being that only the ground barn with attachment and butcher shop with attachment and the contents of these were destroyed, the verdict can cover these only, and cannot exceed the total amount for which these buildings and their contents were insured, viz : $800 with interest.

" 2. By the terms of the policy the ground barn and attachment and the butcher shop and attachment were insured for $400, and their contents also for $400, and the verdict therefore cannot exceed $800 with interest, these being the only buildings destroyed.

" 3. By the terms of the policy the smoke house was insured for $5.00 and its contents for $500, and, the uncontradicted evidence being that the smoke house and its contents were not destroyed, there can be no recovery on account of these.

" 4. The policy being a solemn written instrument is presumed to contain the whole contract and cannot be changed or overthrown by oral proof, unless the evidence be such as would move a chancellor to make a decree, and this is never done upon the uncorroborated evidence of a single witness. The only evidence of any other agreement than the terms of the policy in this case is the testimony of the plaintiff, which is contradicted by the only other person alleged to have been present, and also contradicted by the persuasive evidence of the policy itself, and, therefore, the jury may only consider the contract between the parties as contained in the policy of insurance.

" 5. Under all the evidence in this case the verdict cannot exceed $800 with interest."

The court refused all the points. [1]

The court charged the jury as follows :

" It appears from the policy, as well as from the evidence given in connection with it, that an application was made to this company for insurance by Hiram B. Graybill. Jacob H. Hershey, the president of the institution, came to Mr. Graybill's place, inspected the·premises and took Mr. Graybill's application.

" Mr. Graybill says that, at the time he took the application, he told him : ' This meat I want insured, not the smoke house, because it would not hold that much. I had a separate room for smoking and would move it in there. That's the way I always did.'

" [Now, having seen these premises and having heard that request, he went home and prepared the policy which has been presented here to you, and which neither Mr. Graybill nor the insurance company seem to understand ; at least they don't agree upon their understanding of it, and, therefore, it is brought here. They do agree to so much of it as covers the barn and the other buildings, you will find on the policy when it is presented to you, each of which was insured ; two were insured for $400 and the contents, as they say, for $400. The other portion they deny having insured in those buildings. And they say the smoke house, which was insured at $5.00, and, as they say, the contents at $500, was not burnt ; and, therefore, they say they are not entitled to pay, not bound to pay for this meat and sausage, burnt in the other room where Mr. Graybill says he told Mr. Hershey it was to be placed after being smoked in the smoke house.] [2] There being then some difficulty with reference to the understanding and construction and the terms of this agreement they have brought it here.

" [With reference to the points that have been presented, I may say that if there were no ambiguities, no difference between them as to what the contents of this paper meant, what it was, if full and clear and easily understood, this first point would have to be affirmed. That is the law in cases where there is no ambiguity, where easily understood. So I shall not affirm that point.

" The second point. That is true. There must be a verdict for $800 according to their own statement. They ask me to say to you the verdict must be for $800 and interest and nothing more. I cannot say that, because that depends upon the construction put upon this policy. Were the meat and sausage, which the plaintiff claims were destroyed, covered by this policy of insurance here presented or not? The testimony of Mr. Graybill is, he made application for this insurance, and told the president of the company, who took the application, where the meat was to be put after it was smoked. He contends that under this policy it was insured; this company contends it was not; and as you find whether it was or was not, from the evidence under this policy, your verdict will be increased or remain firm at $800.] [3] It cannot be less than that.

" [The policy has been admitted in evidence, and you have heard the explanations and the construction put upon it by each of the parties. They differ. The plaintiff and defendant differ; and the court must not use its discretion to modify conditions or provisions of the contract entered into by the parties in order to effect what it might consider a more equitable arrangement than that resulting from the enforcement of the strict terms of the policy; but in the construction of an insurance policy it is to be observed, the language of the policy is not in all cases conclusively binding or effective. Grounds may sometimes exist for relief in equity. Thus, in a clear case of mutual mistake, where it plainly appears by the evidence outside of the contract that the real agreement of the parties is not correctly evidenced by the policy; or where there is a mistake on one side, or fraud in introducing it on the other, a written contract may be reformed to correspond with the real agreement. If the language of the policy is ambiguous and fairly open to doubt, oral evidence is admissible to explain the real meaning of the parties. Contracts of insurance having been framed by the insurers in their interest, and the insured being obliged to accept the form offered in order to secure insurance, any ambiguity as to the intent or meaning of its terms, what property it is intended to cover, or where situated will be construed in favor of the insured, and the contract will be sustained if possible and liberally construed to insure in-

demnity.   The object of the insured being protection, that is indemnity against loss, such construction should be placed on their contract, as according to the nature of the transaction will effectuate that object.] [4]

"A policy of insurance may be reframed by oral evidence on the representations made when the policy was delivered to the insurer.   In this case Mr. Jacob Hershey, who was then president of the insurance company, visited the place where the insurance was to be effected and took the application himself from Mr. Graybill, who desired to be insured, and saw the premises.   Mr. Graybill was asked—at the time he got the policy, at the time the policy was delivered to him from Mr. Jacob Hershey, who went home as you remember and wrote out the policy and brought it back—whether Mr. Hershey informed him the meat, he was testifying to here, was insured in this policy, and his answer was : ' Yes, sir ; Mr. Hershey told me.   I told him this meat I want insured, not the smoke house, because it would not hold that much.   I had a separate room for smoking and would move it in there.   That's the way I always did.'   Then was asked the question : ' Please state whether or not he told you that was insured at the time he gave you the policy ?   A. Yes, sir; he said that is all right.' This Mr. Hershey denies.   [You will have to judge between them, which is most likely to be telling the truth, which is most likely to recollect.   Both are interested ; one on the part of the company, the other on his own part.   That is about the only point in the case.   If you believe from the evidence that Mr. Graybill told Mr. Hershey at the time he was there inspecting the premises to be insured where these contents were to be, and that was understood by Mr. Hershey, and when he came back he told Mr. Graybill upon inquiry it was insured, that covered it, then that would bind the company.   If that was not the case then it would not bind the company], [5] and you will have to say from the agreement whether it is covered by it or not."

Verdict and judgment for plaintiff for $1,641.25.   Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Eugene G. Smith* and *A. F. Hostetter*, for appellant.—An executed written contract cannot be pushed aside by the uncorroborated testimony of a single witness : Rowand v. Finney, 96 Pa. 196 ; Murray v. New York, Lackawanna & West. R. R., 103 Pa. 43 ; North and West Branch Ry. Co. v Swank, 105 Pa. 555 ; Phillips v. Meily, 106 Pa. 543 ; Sylvius v. Kosek, 117 Pa. 76 ; Fry v. Heydt, 116 Pa. 611 ; Cooper v. Farmers Mut. Fire Ins. Co., 50 Pa. 307.

*J. Hay Brown, W. U. Hensel* with him, for appellee.—It is the duty of the court to interpret a contract : Folsom v. Cook & Co., 115 Pa. 539 ; Codding v. Wood, 112 Pa. 371.

A promise to pay a loss and forfeiture for a breach of the condition, the company having full knowledge of the breach, is a waiver of noncompliance : Wood on Ins. 949 ; Greenfield v. Mass. Mut. Life Ins. Co., 47 N. Y. 439 : Williams v. Hartford Ins. Co., 54 Cal. 442.

Contracts of insurance being prepared by the insurer, must be construed most strongly against the company insuring : Strunk v. Farmers Ins. Co., 160 Pa. 345 ; 2 May on Fire Ins. 1108 ; Viele v. Germania Fire Ins. Co., 26 Iowa, 9 ; Benson v. Ottawa Agr. Ins. Co., 42 U. C. (Q. B.) 282 ; McMaster v. Ins. Co. of North America, 55 N. Y. 222.

A question on whether a change of circumstances in the situation, use or condition of the property insured increases the risk is purely one of fact for the jury, and their finding is conclusive : Wood on Fire Ins. sec. 243 ; Williams v. People's Fire Ins. Co., 57 N. Y. 285.

When the agent of an insurance company erroneously describes the property in an application for a policy of insurance prepared by him and signed by the insured, the company cannot in case of loss defend by reason of the misdescription : Susquehanna Co. v. Cusick, 109 Pa. 157.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895.

This case turns upon the meaning of the word " contents " as used in the policy of insurance sued on. A ground barn . and a butcher shop were insured as one building for the sum of four hundred dollars and the contents were insured for four hundred dollars more. A smoke house was insured for

five dollars and its contents for five hundred dollars.  The barn and butcher shop were burned with their contents.  The smoke house was not burned, but its contents which had been removed to a storage room in one end of the butcher shop were wholly consumed.  The question presented on this appeal is whether the smoked meats in the storage room, which were taken there as fast as they were cured in the smoke house, were contents of the smoke house within the meaning of the policy and were to be paid for by the company as part of the loss for which it was liable.  Words must be understood in the sense in which they are commonly used in the business to which the contract in which they are found relates.  This contract was to insure the buildings, machinery and stock of a butcher. The president of the company proposing to insure was on the ground.  The buildings and the property were examined by him.  The evidence shows that in the barn and butcher shops there were a steam engine and boiler with conveniences for handling dressed cattle, machinery for chopping or grinding meat, and for making bologna and other sausages.  These as the plaintiff alleges constitute the contents of the barn and butcher shop that were insured for four hundred dollars.  The smoke house and storage room were also pointed out to him and it was explained to him, as the plaintiff testifies, that the smoke house could hold but a small amount of meat at one time while the process of smoking was going on, but the hams, sausage, bacon, or other meat was removed from the smoke house when cured and stored in the storage room, and that what was wanted was insurance on the smoked goods.  The plaintiff says that the president stated that the smoked meat would be properly insured as contents of the smoke house, and these words were written in the application and policy with that understanding, viz : that they would include and cover the smoked meats taken out of the smoke house for storage in the room used for that purpose.  The learned judge of the court below left this evidence to the jury for their consideration, telling them if they were satisfied by it the word " contents " used in connection with the smoke house was understood and intended by both insurer and insured to cover the smoked meats in store, whether actually in the smoke house or not, the plaintiff would be entitled to recover to the extent of five

hundred dollars for his loss on these goods.    This is assigned as error, and the contention of the appellant is that it permitted an alteration to be made in a written instrument upon the uncorroborated testimony of the plaintiff.    But the word " contents " is not a certain and definite description of any particular class of goods.    Its meaning must be ascertained by considering the context, the nature and methods of the business for which the building whose contents are to be insured is to be used, and the understanding and intentions of the parties as expressed at the time the insurance was contracted for. Thus we learn from the evidence in this case that the contents of the butcher shop were not made up of slaughtered cattle, but of a steam engine and various pieces of machinery ; while the contents of the smoke house included hams, bacon, bologna sausages, and other forms of smoked meat.    This is, in the absence of a detailed description of the articles in the body of the policy, the only way in which the character and value of the contents of a building can be shown.    But the defendant alleges that as the building was not burned its contents could not be.    This is a non sequitur.    The contents might be destroyed while outside the building, and when that happens the question of the plaintiff's right to recover must depend on whether the purpose of the removal was such as to detach the goods permanently from the building and create a new or an increased hazard not contemplated when the contract for insurance was made.    The investigation of this question is not an attempt to reform the contract but to determine its meaning and extent.    The rule in equity governing the reformation of contracts is not applicable therefore, but the jury is at liberty to determine the question presented to them in this case by the preponderance of the evidence.    The evidence showing the capacity of the smoke house, the necessity for the removal of the smoked meat as soon as it was properly cured to some place near by for storage, while a fresh supply of meat for smoking was put in its place, the location of the storage room and quantity of smoked meats kept in store ready for sale, was relevant to the inquiry in this case and was properly admitted. So was the evidence tending to show that the attention of the insurer was called to the manner in which the smoke house was used and the smoked meats stored, that he was informed that

the smoked meats were what were to be insured in connection with the smoke house ; and that with full knowledge of all the facts he selected the word " contents " as a proper and sufficiently descriptive word to cover the smoked meats whether in the smoke house undergoing the process of smoking, or in the store room after its completion.   The facts and circumstances thus brought to the attention of the court and jury were helps to a correct exposition of the words the parties had employed. They tended to corroborate the plaintiff's version of the contract and to sustain his claim.   They were persuasive in their character and, as we infer from their verdict, satisfied the jury that the words " contents of the smoke house " were understood and intended by both parties to cover the smoked meats passing through the smoke house to the room near by in which they were stored till needed for the supply of customers.   We see no error in the rulings complained of and the judgment is affirmed.