# Mellon *v.* Ohio German Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Construction of policy—Manufacturing establishment—Running plant at night.*

1. In determining what a contract of insurance means, the circumstances surrounding the making of it, and affecting the subject to which it relates may be taken into consideration in ascertaining the meaning of its provision as the parties understood it. Such a contract should have a reasonable interpretation, and when its words are susceptible of two interpretations that should be adopted which will sustain a claim to the indemnity to secure which it was entered into.

2. Where the subject of fire insurance is a manufacturing establishment for the slaughter of live stock and the manufacture and cure of meat products, and the plant contains refrigerating appliances and electric light apparatus, a stipulation in the policy that the plant is not to be operated in whole or in part at night later than ten o'clock, is not to be construed as prohibiting the running of the electric light and cold storage plant after the hour named.

3. In such a case it was not in contemplation of the parties that the daily product of the plant should be spoiled from lack of refrigeration, or that there should not be any light about the premises after ten o'clock or that all steam should be withdrawn from the boiler or all smoke blown

out of the smokehouse before ten o'clock. Such an interpretation of the contract would permit the insurer to close the plaintiff's manufactory or forfeit the indemnity secured by the policy.

Argued April 22, 1909. Appeal, No. 51, April T., 1909, by defendants, from judgment of C. P. Westmoreland Co., May T., 1907, No. 337, on verdict for plaintiffs in case of Blose & Mellon, a copartnership, v. Ohio German Fire Insurance Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before DOTY, P. J.
The facts are stated in the opinion of the Superior Court.
Defendants presented this point:
1. Under the law and all the evidence the verdict should be for the defendants. *Answer:* We cannot affirm this proposition because we conceive that the case necessarily turns on the question of fact which has been submitted to you for your determination. [1]

The court charged in part as follows:
[It is not provided that the fires in the boilers should be extinguished and, therefore, the mere fact that these remained, or that lard remained in the kettle or smoke in the smokehouse, would not necessarily make this policy void, because these matters must have been in contemplation of the parties at the time.] [2]
[All that is provided is that the plant shall not operate and we understand by that is meant that they shall not go on carrying out the purpose of the establishment in the manufacturing of sausage, slaughtering live stock and making and curing ham or manufacturing lard.] [3]
[We do not regard the mere fact that the electric light plant ran as within the strict terms of this provision; nor do we regard as invalidating the policy the fact that the cold storage plant was in operation, because it being a packing house for the preparation of meat products for the market it must necessarily have been in contemplation of the parties at that time that the usual means employed for the preservation of such products

would be continued during the whole period, therefore the parties simply provided that they should cease manufacturing after ten o'clock at night.] [4]

Verdict and judgment for plaintiffs for $1,000. Defendants appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*W. K. Jennings*, with him *Gaither & Whitten*, and *D. C. Jennings*, for appellants, cited: Alspaugh v. British-American Ins. Co. of Canada, 121 N. Carolina, 290; Lonzer v. R. R. Co., 196 Pa. 610; Holland v. Kindregan, 155 Pa. 156.

*John E. Kunkle* and *Edward E. Robbins*, for appellees, cited: Frick v. United Firemen's Ins. Co., 218 Pa. 409; Graybill v. Fire Ins. Co., 170 Pa. 75; Machine Co. v. Ins. Co., 173 Pa. 53; Roe v. Dwelling House Ins. Co., 149 Pa. 94; Caldwell v. Fire Assn., 177 Pa. 492.

OPINION BY HENDERSON, J., October 11, 1909:

The controversy in this case arises over the application of a clause in the policy of insurance to the facts connected with the subject of the risk. The part of the policy referred to is in these words: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . . if the subject of the insurance be a manufacturing establishment and if it be operated in whole or in part at night later than ten o'clock." The plaintiffs were engaged in slaughtering live stock and manufacturing and curing meat products and the policy covered their plant which contained among other appliances refrigerating and electric light apparatus. The defense set up was that the establishment was operated later than ten o'clock at night between the date of the policy and the time of the fire. Two questions arose at the trial, one of which was determined by the court as a matter of law and the other submitted to the jury as a question of fact. The jury was instructed that the running of the electric light and cold storage plant after the hour named was not in violation of the contract;

that taking into consideration the character of the business the parties must have contemplated that the usual means employed for the maintenance of the business would be continued through the night if necessary and that the policy was intended to apply to manufacturing only. The matters of fact alleged by the defendant in addition to the use of the electric light and refrigerating equipment were that lard was rendered by the plaintiffs' employees after ten o'clock at night and the smokehouse was continued in operation. The contract between the parties was intended to indemnify the plaintiff against loss by fire of the insured premises while it was used and occupied by them as a meat packing establishment. The insurer is chargeable with knowledge of the customary methods of conducting the business in which the property insured is used: McKeesport Machine Co. v. Fire Ins. Co., 173 Pa. 53. This means that the contract is to be liberally construed in furtherance of the indemnity for which the parties contracted. In determining what the contract means the circumstances surrounding the making of it and affecting the subject to which it relates may be taken into consideration in ascertaining the meaning of its provisions as the parties understood it: Bole, Assignee, v. Ins. Co., 159 Pa. 53; Graybill v. Ins. Co., 170 Pa. 75. Such a contract should have a reasonable interpretation and when its words are susceptible of two interpretations that should be adopted which will sustain a claim to the indemnity to secure which it was entered into: Doud v. Citizens' Ins. Co., 141 Pa. 47; Western & Atlantic Pipe Lines v. Ins. Co., 145 Pa. 346; Frick v. United Firemen's Ins. Co., 218 Pa. 409. The parties contracted with the knowledge that the plant insured was a going concern with the usual appliances and facilities employed in that business. It is reasonable, therefore, to conclude that it was not the intention of either party that the contract should have the effect of closing up the business or prevent the owners from prosecuting it in the only way which was practicable as disclosed by the evidence. It was not in contemplation of the parties that the daily product of the plant should be spoiled from lack of refrigeration or that there should not be any light about the premises after ten o'clock or that all steam should be with-

drawn from the boiler or all smoke blown out of the smoke-house before ten o'clock. Such an interpretation of the contract would permit the insurer to close the plaintiffs' manufactory or forfeit the indemnity secured by the policy. It should very clearly appear that such was the understanding of the parties before so strict and unreasonable a construction should be given to their contract. If the insurer intended to prohibit the presence of lights on the premises after ten o'clock or required a nightly cessation of the meat smoking process or a stoppage of refrigeration it should have said so in unmistakable terms. It was not disputed by the plaintiffs that they were prohibited from slaughtering stock or manufacturing sausage or rendering lard after the hour stipulated. These were manufacturing operations and clearly covered by the prohibition of the policy. The other acts complained of were not operations of manufacturing within the meaning of the contract as understood by the parties, the nature of the business being taken into consideration.

The questions of fact were clearly and fairly submitted to the jury by the court. Only two witnesses were called by the defendant and the most important of them admitted that he had had difficulty with the plaintiffs. There was contradiction to some extent of their testimony by the witnesses called in rebuttal and the court would not have been justified in declaring that the facts set up by the defendant were established. The verdict of the jury is conclusive against the defendant on the allegation that the plant was operated after ten o'clock and the instruction to the jury on the construction of the contract was in accordance with the authorities cited and many others.

The judgment is affirmed.