## MUNICIPAL LIFE INS. CO. et al. v. UNITED FIDELITY LIFE INS. CO.

### No. 11481.

Court of Civil Appeals of Texas. Galveston.

April 8, 1943.

Rehearing Denied April 27, 1943.

A. D. Dyess, of Houston, for appellants.

Lawler, Wood & Childress, of Houston, and Storey, Sanders, Sherrill & Armstrong, of Dallas (Virgil Childress, of Houston, and Harold B. Sanders, of Dallas, of counsel), for appellee.

GRAVES, Justice.

This, in part, is a second presentment of this cause here, the first one having been upon the appellee's plea of privilege, asking to be sued therein, if at all, in its residential county of Dallas; this court, by opinion reported in 147 S.W.2d at page 288, sustained the venue as laid, in Harris County.

It now comes back on the protest of the appellants (Municipal Life Insurance Company, a local mutual aid insurance association under Texas statutes, H. A. Birkelback, its president and general manager, B. B. Kirkpatrick, and many other members and policyholders of that association), who had sued for themselves and all other policyholders similarly situated—pursuant to Nos. 39, 40, 41, and 43, Texas Rules of Civil Procedure— against a "take nothing" judgment in its favor on all their claims against the appellee, except for a $2,759.61 liability on the agency contract it admitted to be due appellant Birkelbach.

The court entered such decree by sustaining the appellee's motion therefor, not-withstanding a previously returned verdict by a jury finding, in substance, in answering special issues submitted, these facts:

"No. 1. The United Company failed to tender to the reinsured policyholders of the Municipal Company a regular form of ordinary life Insurance in such face amount as the premium then being paid to the Municipal Company by its respective policyholders would purchase at the attained age of each such policyholder on the basis of the United Company's rates applicable to such policyholders under the generally accepted practice of underwriting of comparable risks.

"No. 2. Except for such failure, 90 per cent of the premiums on policies so tendered and accepted would, in all reasonable probability, have been paid to and received by the United Company during the year from October 22, 1939, to October 22, 1940.

"Nos. 3 and 4. Eighty-five per cent of the premiums on policies so tendered and accepted would, in all reasonable probability, have been paid to and received by the United Company for the year from October 22, 1940, to October 22, 1941, and 40 per cent for the 8-year period paid from October 22, 1941, to October 22, 1949.

"No. 5. It was the mutual intention and understanding between United Company and H. A. Birkelback on the other part, that the rates to be charged by it on policies to be issued to policyholders of Municipal Company were such premium rates as were charged for ordinary life insurance in its regular department.

"No. 6. If the United Company had tendered to each and every policyholder listed on Exhibit A attached to the reinsurance contract ordinary life insurance policies for the full face value of the policies of such members then in force and effect with the Municipal Company at the rates being paid by such policyholders to the Municipal, 95 per cent of the business covered by such reinsurance contract would have been kept in force and effect in the United for the year October 22, 1939, to October 22, 1940, 90 per cent of the premiums contracted to the Municipal thereon would have been paid to United Company thereon for the year of October 22, 1940, to October 22, 1941, and an average of 68 per cent per year for the succeeding 8-year period."

The suit was one for varying amounts of money recoveries or compensations by different ones of the appellants, respective-

ly, against the appellee, for the alleged "repudiation" by it of two different contracts in writing between the parties, the one a re-insurance agreement between the two insurance concerns (evidenced by formal document of October 21 of 1939, together with an amendatory letter of October 24, 1939), the other an incidental general agency engagement between the appellee and appellant Birkelbach individually, which by its own terms had been made subject to the former; copies of all three documents are hereto appended, as Exhibits A, B, and C, respectively.

Under attending averments that these two writings were interdependent, should be construed together, and that the declared upon repudiation of the re-insurance undertaking amounted—ipso facto and perforce —to a like scrapping of the general agency one also, the brief of all the appellants thus characterizes the nature of the proceedings, the resulting trial of which, they urged, had entitled them to the relief they so sought by a judgment to that effect on the verdict of the jury:

"This is not an action by beneficiaries under policy or policies of insurance alleging a breach of the terms of the insurance policies, and the failure of the insurer to perform according to the terms of such policies, but is an action (1) by Birkelbach predicated upon the repudiation, not only of the re-insurance agreement, but of Birkelbach's agency contract, which by its own terms was make subject to such re-insurance agreement.

"(2) This is an action by policyholders for the repudiation of such re-insurance contract and the repudiation of the terms of the insurance policies held by them, respectively, the insurer's obligation of which had been assumed by United, which obligations, once assumed by United, it had not right to change or alter in any manner whatsoever."

"We, therefore, most earnestly submit that this was an action for breach and repudiation of contract of re-insurance and the re-insurance certificates issued by United to the various policyholders of the Municipal, that United's attempt to re-rate such policyholders and to cut down the face of their policies, to write them in its "Intermediate Department", where its rates were far higher than those charged by it for regular old line ordinary life insurance, was a repudiation of said insurance policies assumed by it, was a repudiation of its re-insurance certificates, and a repudiation and breach of the re-insurance agreement."

As indicated, the trial court, while initially having submitted the special issues to the jury on the view that they embodied material issues of fact (and all of them) raised by the pleadings and evidence, later decided rather that the conclusive or undisputed evidence had developed that no issue of fact remained, that the appellee had been shown to have complied in all respects with its legal obligations under both contracts, hence had been entitled to the judgment non obstante veredicto so awarded it.

So that, the parties come on appeal with substantially the same several positions they thus asserted below, and this court, after a review of the record, concludes that the correctness or not of the judgment so rendered, in final analysis, turns upon the interpretation that should be given the re-insurance contract between the two companies, and especially paragraph 3 thereof; indeed, that the controlling question the appeal presents, in determining whether or not the appellee "repudiated" or breached either of the contracts involved, is whether or not such Section 3 should be given the above-quoted meaning appellants contend for, as against that the appellee insists upon, the trial court having adopted the latter in granting the appellee's motion for judgment notwithstanding the verdict.

■ This court is constrained to hold such action to have been correct, and that, as the appellee's counter-points in its brief present, these considerations require the construction so given that crucial provision of the contract, to-wit:

"The only contractual obligations assumed by United with reference to the Municipal policyholders were: (1) to insure the existing mortality of such policyholders until January 1, 1940, and (2) to 'offer' to each of them 'one of its ordinary life policy forms, either standard or substandard', at its rates 'applicable to such policyholders under the generally accepted practice of underwriting of comparable risks."

"The form of policy issued by United in its intermediate department and offered to the Municipal policyholders was ordinary life insurance, and was one of its standard policy forms. Therefore, as a matter of law, the offer of such form of policy to the Municipal policyholders constituted literal and complete performance of United's ob-

ligation under the reinsurance contract to offer to such policyholders 'one of its ordinary life policy forms'.

"The undisputed evidence showing that every policy under $1000.00 on a single life was, in due course of business, issued by United in its intermediate department at higher rates than obtained for the same form of policy in amounts of $1000.00 and over in its regular department, and that at the time the reinsurance contract was executed (October 21, 1939) United had in force over $1,000,000 of insurance issued in its intermediate department at the intermediate department rates, it would have constituted unlawful discrimination against such existing policyholders to issue to the Municipal policyholders ordinary life insurance policies of less than $1000.00 on a single life at the regular department rates for policies of $1000.00 and over.

"The method pursued by United in determining whether the Municipal policyholders were 'standard or substandard' risks was, under the undisputed evidence, in accordance with 'the generally-accepted practice of underwriting of comparable risks', as authorized by the re-insurance contract. Therefore, the policies issued to the 'rated-up' Municipal policyholders strictly conformed with United's obligation under the reinsurance contract to offer to each of such policyholders 'one of its ordinary life policy forms' in such face amount as the premium then being paid to Municipal would purchase 'at his attained age on the basis of United rates applicable to such policyholders under the generally-accepted practice of underwriting of comparable risks."

These authorities are cited as sustaining the conclusion just stated: 12 Am.Jur. 754, 755; 12 Am.Jur. 762–764; Graybill v. Penn Tp. Mut. Fire Ins. Ass'n, 170 Pa. 75, 32 A. 632, 29 L.R.A. 55, 50 Am.St.Rep. 747; Art. 5053, Vernon's Ann.Texas Civil Statutes; Art. 578, Penal Code of Texas; Empire Ins. Co. v. Cooper, Tex.Civ.App., 138 S.W.2d 159; Great Southern Life Ins. Co. v. Peddy, Tex.Civ.App., 151 S.W.2d 346, reversed on other grounds 139 Tex. 245, 162 S.W.2d 652.

In other words, it seems to explicitly appear from cited paragraph 3 that all appellee was required to do was to offer to each of the Municipal policyholders "insurance under one of its policy forms"; to issue to each of them "one of its ordinary life policy forms, either standard or substandard" in such face amount as the premium then being paid to Municipal "will purchase at his attained age on the basis of United rates applicable to such policyholders under the generally-accepted practice of underwriting of comparable risks."

When the contract is given the meaning stated, it follows from the undisputed evidence that the appellee did live up to all of those obligations in fact under both the re-insurance and the general agency agreements; wherefore, it becomes unnecessary to either detail or to make a resume of the testimony so showing. It likewise follows, as appellants have correctly contended in that particular respect, that, since Subdivision 3 of the general agency instrument expressly recites it is subject to all the terms and conditions of the re-insurance one, the two together are therefore interdependent, hence a repudiation or breach of the one becomes ipso facto that of the other also.

The full legal basis underlying this controversy having above been given in the copying of all three papers, this opinion may be shortened accordingly.

Since appellants' suit herein cannot get away from those moorings, no finely-drawn distinctions between an action against an insurance company for its breach of or failure to carry out the terms of its policies and one predicated upon its alleged repudiation of both its reinsurance and subsidiary agency contracts can profit them.

Neither have they, in any material respect, undermined the conclusive effect of the great body of evidence showing that all the policies offered under these contracts by the appellee to different ones of the appellants were written, both as to form and amount, in compliance with the criteria provided by the re-insurance contract, as amended by its appended letter of October 24, 1939, there being ample supporting testimony therefor.

Especially are these findings on the facts in no way impeached as and when applied to the court's fundamentally differing construction from the given one of appellants as to the properly inferable mutual intention of the parties to these contracts, in making them.

So that, it must follow upon the whole case, that there has been shown no "repudiation" of, nor breach by, the appellee of any of its legal obligations under these contracts, but plenty of both of appellants' constructions touching such obligations; that

is, the appellee was shown to have, within a few months after their respective dates, "repudiated", breached, and expressly refused to recognize any of appellants' contended for constructions, whereupon they at once filed this suit against it to enforce them.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.

### Exhibit A.

"The State of Texas,
County of Dallas.

"This agency agreement made and entered into by and between United Fidelity Insurance Company, a corporation, with its domicile in Dallas, Texas, hereinafter referred to as Company, and H. A. Birkelbach, who resides in Harris County, Texas, hereinafter referred to as Agent, witnesseth:

"Whereas, the Agent is president of Municipal Life Insurance Company, a local mutual aid association doing business within a radius of 100 miles of Houston, Texas, and agrees to undertake to convert or transfer any and all white life insurance risks of Municipal Life Insurance Company policies issued by the United; and

"Whereas, it is the desire of the United to appoint H. A. Birkelbach as General Agent for such purposes within the area above mentioned:

"Now, therefore, in consideration of the mutual benefits that will accrue to each party, it is hereby agreed as follows:

"1. The Company shall: (a) Issue new policies of life insurance to all insurable risks of the Municipal Life Insurance Company that are included within Exhibit 'A' attached to the contract this day executed between the United and Municipal Life Insurance Company, which policies shall be upon the regular form subject to the usual conditions of the company. However, all of such policies agreed to be issued shall be of the ordinary life plan of insurance.

"(b) The new policies agreed to be issued shall be for the same premium now being paid to Municipal Life Insurance Company, but the face of the policy shall be altered or changed to meet the existing and established rates of the Company.

"(c) The Company shall not be required to issue its policy to any policyholder or applicant unless he is in good health at the time of the application and meets the usual requirements for the issuance of its regular policies. No liability shall exist against the Company to issue such policies except to those who are in good standing and paying the regular premiums as now established by the Municipal Life Insurance Company.

"(d) United shall not be required to issue any such policies after January 1, 1940, except upon independent application upon regular forms and subject to the usual and regular terms of the Company.

"(e) H. A. Birkelbach is to be appointed General Agent of the Company in the territory above mentioned, and the Company agrees to pay to him its regular commissions paid to other agents according to its usual terms which are set out in Exhibit 'A' hereto attached, being the regular agreement concerning agents writing intermediate business, and Exhibit 'B' relating to agents writing business including policies of $1,000.00 and above, and being in the regular department.

"(f) The agent shall receive the regular commission as set out in said exhibits on all policies that are accepted by the policy holder of Municipal Life Insurance Company and likewise shall pay the regular commissions upon any new business written by him or under his supervision. The Agent shall have the right to appoint sub-agents, subject to the approval of the Company, but the agent shall be solely liable to the Sub-agents for their compensation, and the Company does not assume any obligations whatever to such sub-agents, and the matter of compensation as between the Agent and sub-agents is subject to their agreement, but in no event shall exceed the regular commission allowed by the Company as shown in the attached exhibits.

"2. The Agent agrees:

"(a) The agent shall use his best efforts to cause to be transferred all insurable white risks for life insurance into the regular forms of insurance issued by the company. As heretofore agreed, he shall be the General Agent of the Company, with authority to write business in any territory, but particularly to give preferred attention to the existing policy holders of Municipal Life Insurance Company.

"(b) The Agent understands that the Company is to issue new policies on its regular form of the ordinary life plan of insurance to all white policy holders of life insurance in the Municipal Life Insurance Company, as shown in the list attached to the contract between the Company and

Municipal Life Insurance Company in such amounts as the age, condition of health and premiums will permit, and the Agent agrees to encourage and assist the transfer or acceptance by the individual policy holders of the new policy to be issued by the Company.

"(c) The Agent shall not recommend nor submit for issuance any risk where the applicant is not in good health or for any other reason and is not a good life insurance risk.

"(d) The Agent agrees that his sole compensation shall be upon a commission basis as per the schedule set out in the attached exhibits, but he shall receive commission on all policies issued by the company and accepted by the present policy holders of Municipal Life Insurance Company, whether such acceptances are obtained through mail or through the efforts of himself or sub-agents. Likewise, he shall be entitled to regular commissions upon any new business written. Also, if the Agent causes the present policy holder in Municipal Life Insurance Company to increase the insurance he has with the Company, he shall be paid the regular commissions for such increased business.

"3. It is understood that this contract is subject to all the terms and conditions of the contract of even date herewith between United Fidelity Life Insurance Company and Municipal Life Insurance Company.

"4. This contract shall be subject to termination as provided in the attached exhibits 'A' and 'B'.

"Executed in duplicate at Dallas, Texas, This 28th day of September, A.D.1939.

"United Fidelity Life Insurance Company
By D. Easley Waggoner Vice-President and General Manager.
H. A. Birkelbach, Agent.
"Witness: W. H. Painter."

Exhibit B.
"Dallas, Texas
October 24, 1939.
"Honorable Walter C. Woodward, Chairman
"Board of Insurance Commissioners,
"Austin, Texas.
"Dear Sir:
"In connection with reinsurance agreement between United Fidelity Life Insurance Company of Dallas, Texas, and Municipal Life Insurance Company of Houston, Texas, dated October 21, 1939, and submitted to you for approval, please be advised that under Section 3, the United Fidelity Life Insurance Company will issue one of its ordinary life policy forms, either standard or substandard, to every policyholder of the Municipal Life Insurance Company covered in the reinsurance agreement.

"It is understood that the particular policyholder of the present Municipal Life Insurance Company has the option of accepting or rejecting the United Fidelity Life Insurance Company policy; but the United Fidelity Life Insurance Company will offer him insurance under one of its policy forms.
"Yours very truly,
"(signed) D. Easley Waggoner,
Vice President.
"The above letter is satisfactory to me.
"(Signed) H. A. Birkelbach
"H. A. Birkelbach."

Exhibit C.
"The State of Texas,
County of Dallas.
"This agreement made and entered into by and between United Fidelity Life Insurance Company, a Texas Corporation, with its domicile in Dallas, Dallas County, Texas, hereinafter referred to as United, and Municipal Life Insurance Company, a local mutual aid insurance association, with its domicile in Houston, Harris County, Texas, hereinafter referred to as Municipal.

"Witnesseth: Whereas, the Municipal is doing business under the local mutual aid insurance plan within a radius of one hundred miles of Houston, Texas, and under and by virtue of recent laws passed by the legislature, it is necessary that the Municipal reinsure its business or change its method of doing business, which will result in increased rates on existing business; and

"Whereas, it is the desire of the Municipal that the existing mortality be reinsured until January 1, 1940, and the United has agreed to reinsure such mortality until that date:

"Now, therefore, in consideration of ten dollars ($10.00), cash in hand paid by the United to the Municipal, the receipt of which is hereby acknowledged, and the further consideration of the benefits that will accrue to each of the parties hereto

820

and to the policyholders of the Municipal; it is agreed by and between the parties hereto as follows:

"1. United Fidelity Life Insurance Company, effective 12 o'clock noon, October 21, 1939, does hereby reinsure all of the mortality liability of Municipal Life Insurance Company affecting all of its white policyholders of life insurance policies or certificates, the list of the mortality hereby insured being shown in the list of policyholders hereto attached, marked Exhibit 'A', and made a part hereof, provided, however, that the United does not assume any liability except those policies in good standing and having paid the premiums according to their contracts as of the date of the liability assessed, it being the intention that the United is not liable upon this agreement to any policyholder except those policy-holders who have paid the regular premiums and kept them in force according to their terms.

"2. United does not assume any liability whatsoever from and after 12 o'clock noon, January 1, 1940, it being the intention of both parties hereto to protect the policyholders herein reinsured until that date only, and in order to permit policyholders to make arrangements for other forms of insurance with United.

"3. Immediately after the attaching of the list of the policyholders hereto, the United will cause to be mailed at once to each of said policyholders at the addresses shown in Exhibit 'A' a certificate or statement showing the reinsurance of the mortality herein assumed until January 1, 1940, and will advise all such policyholders that it will shortly thereafter deliver to such policyholders a regular form of ordinary life insurance issued by the United in such face amount as the premium now being paid to the Municipal will purchase at his attained age on the basis of United rates applicable to such policyholders under the generally accepted practice of underwriting of comparable risks.

"It is distinctly understood and agreed that nothing herein shall be construed as being an unlimited liability upon the part of the United to pay to each and all of the policyholders any liability accruing under any by virtue of their policies, but that United shall be subrogated and having any defenses to any claims asserted under and by virtue of said policies that the Municipal has as of the date of this contract, it being the intention that the United is not assuming any greater liability than the Municipal has under its existing contracts for the payment of death liabilities under life policies only.

"5. Each party to this contract represents to the other that this agreement has been expressly authorized by the respective directors of each party hereto and is further subject to the approval of the Life Insurance Commissioner of the State of Texas.

"Executed in duplicate at Dallas, Texas, this 21st day of October, A.D.1939.
"United Fidelity Life Insurance Company,
"By D. Easley Waggoner,
"Vice-President and General Manager.
"(Seal)
"Attest: M. H. Painter, Secretary.
"Municipal Life Insurance Company,
"By H. A. Birkelbach, President.
"(Seal) R. Birkelbach, Secretary.
"10/23/39 Approved: Walter C. Woodward, Chairman,
"Board of Insurance Commissions."