IOWA ELECTRIC COMPANY et al., Appellants, v. HOME INSURANCE COMPANY, Appellee.

No. 46597.

FEBRUARY 6, 1945.

Barnes, Chamberlain, Hanzlik & Wadsworth, of Cedar Rapids, for appellants.

Donnelly, Lynch, Anderson & Lynch, of Cedar Rapids, for appellee.

GARFIELD, J.—We disregard the fact that two mortgagees joined as plaintiffs with the owner.

The trial court held as a matter of law that the policy did not cover the hydrogenerator which had been damaged by fire, set aside the jury's verdict for plaintiff and entered judgment for defendant as though it had sustained defendant's motion for a directed verdict. (See Rule 243(b), Rules of Civil Procedure.) Defendant's motion for new trial was overruled. We are required to consider the evidence in the light most favorable to plaintiff.

The policy, dated October 1, 1938, is an Iowa standard fire policy with numerous riders and certificates. The provisions around which the controversy centers are contained in these attached papers and not in the policy proper. The coverage is "$70,000.00 on contents contained in the brick Electric Generating Plant building situate S. Walworth Avenue and River Street" in Anamosa. The fourth section of one of several attached papers provides: "The term 'Building' shall be construed to cover the entire structure including all communicating

and/or connected additions and attachments * * *." The vital question is whether it can be said as a matter of law that the damaged hydrogenerator was not contained in a communicating or connected addition to the "generating plant building" referred to in the coverage.

At all times material hereto plaintiff has owned and operated an electric generating plant in Anamosa. The main building, 55 by 60 feet, 32 feet to the eaves, had been built for many years. It contains the main switchboard that controls all the generators, the high-voltage switch gears for the main transmission lines, two Diesel-engine driven generators, the heating plant and washroom. A smaller building was built in 1936, 18 or 20 by 24 feet, 35 feet high, at a distance of 24 feet from the main building, with a lawn in between. Both buildings are of brick. The smaller building, "just a simple rectangular brick box," sits out over the flume that carries the water into the water wheel and houses the hydroelectric generator which was damaged by fire on January 19, 1943. The hydroelectric unit consists of the water wheel, the generator, and the speed regulator or governor. The current generated in the hydrogenerator goes into the main switchboard in the old building and is distributed from there.

Both buildings face west. There is a sidewalk along the west side of the buildings between the door to each building. There are four conduits, about four inches inside diameter, that extend underground between the buildings. One conduit carries three wires in a cable carrying 2,300 volts of current generated by the hydro unit into the main switchboard. Another conduit carries wires from the main switchboard to "the field" of the hydrogenerator. A third conduit carries a set of control circuits from the main switchboard to the governor on the water wheel. The fourth conduit carries wires for the lighting and heating of the main building. The controls that start and stop the hydrogenerator are on the main switchboard and it is operated and controlled entirely from the main building. An exciter located in the old building near the switchboard is used in connection with the hydro unit. It is an electric generator which causes the hydro unit to generate alter-

nating current. Without the exciter the hydro unit would not generate alternating current.

The hydrogenerator is operated by the water power from the river and runs most of the time. When additional current is needed it comes into the main building through transmission lines from Cedar Rapids and Maquoketa. The two Diesel engines in the old building are used only in an emergency when the transmission lines are down. Two electrical engineers connected with plaintiff company testified in substance that the hydro unit is an integral part of plaintiff's generating plant. One of the engineers testified that the hydro unit could be located several miles from the main switchboard but it would then require an entirely different system of controls from that employed when it is within a relatively few feet of the switchboard. Also that overhead wires could be used rather than underground conduits, but not as efficiently, and that special control equipment would then be needed.

The trial court left it to the jury to determine whether the smaller building was a "communicating and/or connected addition or attachment" to the main building. After the verdict was returned, however, it ruled as a matter of law that it was not and, in effect, sustained defendant's motion for directed verdict.

The term "communicating or connected addition" or similar term frequently found in fire-insurance policies has never been construed by this court. A similar term was involved in Kimball Bros. Co. v. Palatine Ins. Co., 197 Iowa 598, 601, 195 N. W. 987, where the opinion uses language upon which plaintiff places some reliance. The court did not commit itself, however, since another clause in the policy was controlling.

In general, plaintiff contends that as used in insurance policies, a communicating or connected addition need not be physically joined to the main building and that here the smaller building was such an addition to the larger because of their ownership, relative location, accessibility, adaptability, and use. Defendant contends, however, that the smaller building is not such an addition because it is not structurally connected with the main building and the parties did not intend the insurance to cover the property which was damaged.

■ Before proceeding further, it seems necessary to determine whether the testimony of defendant's witness Larson, which was subsequently stricken upon plaintiff's motion, is to be considered by us. Larson, a special agent for defendant, testified over plaintiff's objections to a conference between him and Fratcher, plaintiff's vice-president and general manager (who had also been a practicing attorney) a short time before the policy in suit was issued in which the insurance on plaintiff's different properties, including the hydrogenerating station, was discussed; following the discussion but during the conference, the word "no" was written in pencil on a typewritten memorandum opposite the description of the hydrogenerating station; a subsequent memorandum was then prepared by defendant which listed the hydrogenerating station as one of the properties on which no insurance was carried; this later memorandum was sent by defendant to one of its agents in Cedar Rapids, along with the policy in suit, to be delivered to plaintiff.

Plaintiff's counsel did not cross-examine Larson. And Fratcher, though present in court, was not called in rebuttal to deny or explain Larson's testimony. The inference defendant seeks to draw from Larson's testimony is that Fratcher told Larson no insurance was wanted on the hydro unit in which the fire subsequently occurred and defendant prepared the policy accordingly. After this testimony was received and after plaintiff had rested, with the Larson testimony in the record, plaintiff moved to strike it for the reasons previously urged in its objections, the principal grounds being that it was an attempt to vary the terms of the policy by parol evidence and that the previous negotiations were merged in the policy. This motion was sustained.

If the Larson testimony was erroneously stricken, it is our duty to consider it. The successful party may, without appealing or assigning errors, save the judgment if an error was committed against him which, if corrected, will make the result reached below a right result. Thompson v. Butler, 223 Iowa 1085, 1092, 274 N. W. 110, 113, and cases cited; McCuddin v. Dickinson, 230 Iowa 1141, 1143, 300 N. W. 308, 309. Squarely in point is Campbell v. Park, 128 Iowa 181, 186, 101 N. W. 861, 862, 104 N. W. 799, where it is said:

"* * * where the evidence has been actually received, and then erroneously stricken out, we may consider such evidence as should have been allowed to go to the jury, in passing upon the correctness of the action of the court in directing a verdict * * *."

We entertain no doubt that the Larson evidence was properly received and erroneously stricken. It is somewhat uncertain that the policy covers the property damaged by fire. At least, it cannot definitely be said there was such coverage. The term "additions," as applied to the facts of this case, is somewhat doubtful or ambiguous. The Larson testimony was therefore proper in order to put the court in the position of the parties and to show that they did not intend the policy to cover the property in question. The testimony did not violate the parol-evidence rule. See, as sustaining our conclusion, Emery & Co. v. American Ins. Co., 177 Iowa 4, 8, 9, 158 N. W. 748, and cases cited; Kelly & Mahon v. Fejervary, 111 Iowa 693, 700, 83 N. W. 791; Hammond v. Capital City Mut. F. Ins. Co., 151 Wis. 62, 138 N. W. 92, Ann. Cas. 1914C, 57, and annotation 59, 65; Globe & Rutgers F. Ins. Co. v. Hamilton, 65 Ind. App. 541, 116 N. E. 597, 598, 599, and cases cited; Graybill v. Pennsylvania Twp. M. F. Ins. Co., 170 Pa. 75, 32 A. 632, 29 L. R. A. 55, 50 Am. St. Rep. 747; 2 Cooley's Briefs on Insurance, Second Ed., 1223; 29 Am. Jur. 1126, section 1501; 26 C. J. 77, 78, section 73; 44 C. J. S. 1224, section 304. It is true that in most of the authorities we have examined the extrinsic proof was offered by the insured. But the rule is equally applicable where similar evidence is offered by the insurer.

In a note in 33 L. R. A., N. S., 156, 161, on this question, it is stated:

"* * * evidence of * * * surrounding facts and circumstances, at the time of the issuance of the policy, is admissible to aid the court in construing the word 'addition' as used in an insurance policy in describing the property intended to be covered thereby. [Citing cases.]"

As with contracts generally, the cardinal principle in the construction of insurance policies is that the intention of the parties should control. Kantor v. New York L. Ins. Co., 219

Iowa 1005, 1007, 258 N. W. 759; Moore v. Farmers Mut. F. & L. Ins. Assn., 221 Iowa 953, 959, 266 N. W. 12; 1 Joyce on the Law of Insurance, Second Ed., 555, section 209; 29 Am. Jur. 172, section 157; 26 C. J. 70, section 69; 44 C. J. S. 1146, section 291.

Plaintiff reminds us that in case of doubt an insurance policy will be construed strictly against the insurer, and if it is fairly susceptible of two different constructions, the one more favorable to the insured will be adopted. Of course, these are well-recognized rules. Brush v. Washington Nat. Ins. Co., 230 Iowa 872, 876, 299 N. W. 403, 404, 405, and cases cited; Service L. Ins. Co. v. McCullough, 234 Iowa 817, 824, 13 N. W. 2d 440, 444, 153 A. L. R. 697, and cases cited; 29 Am. Jur. 180, 181, section 166; 32 C. J. 1152, section 265; 44 C. J. S. 1166, section 297c. But these rules should not be applied to contravene the intention of the parties. Pilgrim Laundry & D. C. Co. v. Federal Ins. Co., 4 Cir., W. Va., 140 F. 2d 191, 193.

We recognize, of course, that the credibility of witnesses and the reasonable inferences to be drawn from their testimony are ordinarily matters for the jury to determine. Under the circumstances here, however, we feel that the Larson testimony is conclusive against plaintiff. No attempt was made either to explain or dispute it. The only reasonable inference to be drawn from this testimony is that the parties did not intend the policy in suit to cover the property for which recovery is sought here. To allow recovery in the face of such undisputed testimony would involve a construction of the policy contrary to that intended by the parties and result in manifest injustice. We are inclined to hold, therefore, that the trial court properly ruled that plaintiff was not, as a matter of law, entitled to recover.

While it is unnecessary for us to determine what our decision would be if the Larson testimony were disregarded, we have given careful consideration to that question and have read all the numerous authorities we have been able to find that bear upon the construction of the policy in suit. It is true the authorities generally hold that it is not always necessary for one structure to be physically attached to another in order to be an addition to it within the terms of a fire-insurance policy. 29 Am. Jur. 218, section 208; Shepard v. Germania F. Ins. Co., 165 Mich.

172, 130 N. W. 626, 33 L. R. A., N. S., 156, and annotations 156, 157, 158; 3 Couch Cyclopedia of Insurance Law 2456, section 750a; 2 Cooley's Briefs on Insurance, Second Ed., 1218; 3 Joyce on the Law of Insurance, Second Ed., 2902, section 1739. See, also, 1 C. J. S. 1455, 1456. Yet few if any cases bearing any analogy to this go as far as it would be necessary for us to go in order to reverse this case, even if we were to disregard Larson's testimony.—Affirmed.

All JUSTICES concur.