**NORTHWESTERN STATES PORT-
LAND CEMENT COMPANY,
Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY, the American Insurance Company, the Home Insurance Company, Insurance Company of North America, Royal Insurance Company, Limited, New Hampshire Insurance Company, Springfield Fire and Marine Insurance Company, a/k/a Springfield Insurance Company, American Central Insurance Company, Defendants.**

Civ. No. 914.

United States District Court
D. Iowa,
Central Division.

July 26, 1965.

5. Cf., Goldlawr, Inc. v. Heiman, 1962, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39.

Robert H. Shepard, Mason City, Iowa, for plaintiff.

Don W. Burington, Gilbert K. Bovard, Mason City, Iowa, John P. Gorman, Chicago, Ill., for defendants.

HANSON, District Judge.

This is a suit on fire insurance contracts. The court has jurisdiction by reason of diversity of citizenship of the parties and the fact that the amount in controversy as to each of the defendants exceeds $10,000.00.

A fire broke out in plaintiff's plant. The fire was a hostile fire. The plant was shut down for a 33 day period. At the end of the 33 day period, the damage had been restored and the plant was able to resume normal operations. There were no sales lost by reason of the fire. This was due to the fact that plaintiff had on hand a sufficient inventory of finished cement to meet all of its sales commitments. During the 33 day interruption period, the plaintiff continued to operate the finish grind facilities using a stockpile inventory of clinker to produce finished cement during the 33 day period.

Clinker is a product made from limestone which is produced in a kiln. It is combined with gypsum to produce cement. Clinker is not a product for which there is a readily ascertainable market value. During the 33 day period of interruption, the plaintiff lost production of 115,242 barrels of clinker. This would produce 120,044 barrels of cement when combined with gypsum.

The plaintiff is a manufacturer, not a mercantile establishment, and the policies all have attached to them a Uniform Standard form of rider called "Business Interruption Form No. 4" and subtitled "Gross Earnings Form for Manufacturing or Mining Risks."

The expense in excess of normal as would be necessarily incurred in replacing the 120,044 barrels of cement would under the particular facts and circumstances of this case be $32,123.33.

It is undisputed that plaintiff is entitled to an expediting expense in the amount of $2,874.67. The parties have presented the court with a stipulation of facts which is incorporated into this opinion.

The Business Interruption Form No. 4 reads in part as follows:

"2. * * * this Company shall be liable for the ACTUAL LOSS SUSTAINED * * * but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required * * * to rebuild, repair or replace such part of the property herein described as has been damaged. * * *

3. * * * It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business * * *

(c) by making use of stock (raw, in process or finished) at the location(s) described herein or elsewhere, such reduction shall be taken into account in arriving at the amount of loss hereunder.

4. * * * This policy also covers such expenses as are necessarily incurred for the purpose of reducing loss under this policy (except expense incurred to extinguish a fire) and such expenses, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Insured to reduce loss under this policy; but in no event shall the aggregate of such expenses exceed the amount by which the loss under this policy is thereby reduced. Such expenses shall not be subject to the application of the Contribution Clause.

5. * * * For the purposes of this insurance "Gross Earnings" are defined as the sum of:

(a) Total net sales value of production,

(b) Total net sales of merchandise, and

(c) Other earnings derived from operation of the business, less the cost of:

(d) Raw Stock from which such production is derived. * * *"

While some other clauses in Form No. 4 are important, particularly Sections 6, 10, and 11, they need not be set out in this Memorandum.

Some things appear to be clear from these policies. "Actual Loss Sustained" need not be arrived at by the "Gross Earnings" method, but "Actual Loss Sustained" cannot exceed loss of "Gross Earnings." Also, it is clear that if actual loss could be reduced by making use of raw or finished stock, the plaintiff was obligated to do so. The policies in Section 4 set out a formula for compensating the insured for loss of stock used to reduce the loss.

It is the position of defendants that plaintiff's only actual loss sustained was $34,998.00 being the expense incurred in reducing the loss. The defendants state that this is so because there is no loss of sales or no loss of earnings resulting from the loss of production. The plaintiff claims this action in no way prevented their loss of production of the 115,242 barrels of clinker.

■ The resolution of this issue depends upon a reading of the insurance contracts. As the court stated in Rogers v. American Insurance Co., 338 F.2d 240, 241 (8th Cir.), the issue is not whether plaintiff suffered a loss, but whether plaintiff suffered a loss insured against by the terms of the policies. We find no basis for finding that the interpretation of coverage varies with the type of business. Also, in National Union Fire Ins. Co. v. Anderson-Prichard Oil Corp., 141 F.2d 443, 446 (10th Cir.), the court said: "The rights and liabilities of the parties are of course measured by the contract of insurance."

In the Anderson-Prichard case, the insured apparently lost no sales. There are several other similarities between that case and the present one. The interruption did not stop production of the finished product, high octane gas. This was done by using a previously stockpiled component part, blending fluid. The interruption caused reduced production of the blending fluid necessitating the use of stockpiled blending fluid. This was done in order that production of the finished product, high octane gas, would not be stopped.

■ In Anderson-Prichard, the parties quarreled over how to compensate the insured for its reduced stockpile of a product used in making the finished product. The insurer in that case argued that this loss should be computed at its actual cost of manufacture and not at its manufactured sale price. The court, however, computed the loss at the market value of this stock and not at its cost of production. Did the court make the insured more than whole? It could be argued that the insured received its profit when it sold the high octane gas and was also allowed the same profit when the court allowed it to include profit that would have been made if the blending fluid was sold as such and not incorporated into the high octane gasoline. Likewise, it can be argued that in the Rogers case the insured was made less than whole. The answer is that the parties are free to write their own contract and they are bound by its terms. The $34,998.00 will in this case make plaintiff whole. However, that may not always be the result in fire insurance cases. See also Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mutual Insurance Co., 362 Mo. 823, 245 S.W.2d 24 (1951); Washington Restaurant Corporation v. General Insurance Co. of America, 390 P.2d 970 (Wash.).

The factual difference between the present case and the Anderson-Prichard case is that the component part here,

clinker, is unlike the blending fluid in that it is not sold in great quantities as a finished product.

■ It is clear in this case that the only loss of the insured is its loss of stock which resulted from the insured's attempt to reduce the loss. Clause 4 clearly states that the policies cover this type of loss and that the insured is compensated by receiving such expenses, in excess of normal, as would necessarily be incurred in replacing any finished stock used to reduce the loss. This is the precise manner in which the insurer wants to compensate the plaintiff. This court can ascertain no other reasonable interpretation of these insurance contracts. This court concludes that this is "what an ordinary man would believe the contract to mean." See the standard of construction in Aeroline Flight Service, Inc. v. Insurance Co. of North America, 133 N. W.2d 80 (Iowa). It is where the contract is fairly susceptible of two different constructions that the interpretation contended for by the insured must be accepted. Iowa Electric Co. v. Home Ins. Co., 235 Iowa 672, 17 N.W.2d 414. The contracts here are not reasonably and fairly susceptible to the meaning contended for by the insured in this case.

■ Plaintiff contends that the duty of the insured to reduce the loss terminates at the end of the period of interruption. The defendants do not argue the contrary. The important point in this respect is that at the end of the interruption period it could be determined what the plaintiff's costs, in excess of normal, would be in restoring its supply of stock. The fact that the plaintiff did or did not subsequently restore this supply of stock is not the important question. The insurer has contracted to compensate the plaintiff for the costs of doing so.

The plaintiff argues that under defendants' theory, the insured must reduce its loss under Section 3(c) of the Business Interruption Form. Plaintiff claims an insured may reduce the loss under any of the three alternatives contained in Section 3. The plaintiff claims this is so because Section 3 uses the word "or" instead of the word "and." It is difficult to see how this argument helps the plaintiff, but in any event, it is clear the three methods of reducing the loss are set out in Section 3 so that this form can have application to a wide variety of factual situations. The method of reducing the loss which applies to the facts of the case is the method which the insured is required to use.

The plaintiff has contended that the "Fire, Casualty, and Surety Bulletins" support this position. These bulletins, as set out in plaintiff's brief do contain some statements similar to those contained in the Anderson-Prichard case. However, it is under the Business Interruption Form used in this case that the plaintiff must be compensated. In some situations, an insured might well receive the market value of the loss of his production, but not in this case where the only loss was stock which was lost because of the effort to reduce the loss.

■■ Where an insurer denies liability at a time when it is without knowledge of what the real facts of the case are, the insurer is not held to have waived other defenses unless the insurer unreasonably delays giving the insured notice of the fact. Vol. 16 Appleman, Insurance Law and Practice, Section 9260–9261. The present case, although submitted on stipulated facts, was a tremendously difficult case for the parties from the accounting standpoint. It was only after much discovery work that the facts were ascertained. In addition, this is not the type of case where waiver usually applies. The insurer did not deny liability on one ground and then switch and deny liability on a different ground. Here the insurer admits liability but only according to the terms of the policy. There is no authority for the proposition that this rule of waiver gives the insured a blanket right to place unreasonable interpretations on the insurance contract. See Pierce v. Homesteaders Life Ass'n, 223 Iowa 211, 272 N.W. 543; Richardson v. Iowa State Traveling Men's Ass'n, 228 Iowa 319, 291 N.W. 408.

Count I of the plaintiff's Complaint dealt with actual property loss as a result of the fire. The parties have settled that portion of the claim and Count I was dismissed pursuant to that settlement. This ruling is based upon Count II which asks damages for interruption of business.

Accordingly, judgment will be entered in favor of the plaintiff and against defendants in the amount of $34,998.00 with interest from December 21, 1962. The plaintiff's claim for damages in excess of this amount will be denied. Plaintiff will be allowed one-half of its costs to be paid by the defendants.