Sloss-Sheffield Steel and Iron Company, complainant-respondent,

*v.*

The Ætna Life Insurance Company, defendant-appellant.

[Argued March 16th, 1909. Decided June 14th, 1909.]

The Alabama agents of a Connecticut insurance company proposed, in writing, to the complainant to write employers' liability policies at an annual premium of $8,725 on a payroll of $1,400,000, and this offer was accepted. It was understood that the premium named in the policies to be issued should be at a higher rate fixed by the company, being the same rate at which the company had insured the complainant during the previous year. Policies were issued in accordance with this agreement, and the premiums paid at the discount rate named in the written proposal of the Alabama agents.—*Held*, that under the facts of the case the complainant was not entitled either to a reformation or rescission of the contract.

35

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported in *74 N. J. Eq. (4 Buch.) 635*.

*Mr. Frederick J. Faulks,* for the respondent.

*Mr. Malcolm G. Buchanan (Mr. James Buchanan,* on the brief), for the appellant.

The opinion of the court was delivered by

SWAYZE, J.

The bill in this case was filed to reform certain policies of insurance, called employers' liability policies, and to enjoin a suit at law which had been brought by the insurance company to recover additional premiums arising out of an excess of the actual payroll over the amount of the payroll on which the premium originally paid had been based. The vice-chancellor advised a decree in favor of the complainant upon its paying the amount which it conceded to be due. The question involved is purely a question of fact, and the view we take of the case is such that it is unnecessary for us to consider whether the powers conferred upon the Alabama agents of the insurance company, a Connecticut corporation, were in fact extensive enough to authorize the contract which the complainant insists was made, or if not, whether the defendant company had held the Alabama agents out as so authorized in such a way that it cannot now deny the authority. We think the case may be determined upon the simpler question as to the actual contract that was made. Mr. McQueen, the vice president of the complainant, who testified in its behalf, and with whom the contract for the insurance was made, testified that that contract, after some negotiations by parol, was embodied in a letter of June 20th, 1905. This letter was rightly regarded by the vice-chancellor as constituting the offer on the part of the Alabama agents. The language is, therefore, of the utmost importance. It is as follows, so far as material:

"We are in receipt of your favor of June 15, also your supplementary letter of June 19, in reference to your company's liability insurance for one year, and in reply thereto we beg to quote you a net price of $8.725 on a payroll of $1,400,000, divided as follows: (Here follow details of payroll.) If your company will enter into an agreement to carry this insurance with the Ætna Life Insurance Company for three years, we will allow you a discount of 2-1/2 % from the price of one year, or $8,506.88, practically the same figures at which the business was written last year, subject to cancellation at your election after the first year by paying the difference between the price for one year and the price for three years."

In short, this was an agreement that the net price for a payroll of $1,400,000 should be $8,725, subject to the two and one-half per cent. discount if the insurance was carried for three years. The policies, however, showed a higher rate, amounting in all to $10,502.10. These policies were duly delivered to the complainant and retained by it for a year without objection and until it desired to cancel them. The amount paid by it for premium was $8,506.88, and no claim is made on the part of the insurance company for an amount in excess of this so far as concerns the payroll of $1,400,000. The controversy is merely as to the rate at which the premium for the payroll in excess of $1,400,000 shall be calculated. The complainant's theory is— and that seems to have been adopted by the vice-chancellor—that the contract embodied in the letter of June 20th, 1905, was a contract to issue a policy at the rate of $8,725, less the two and one-half per cent. discount, for a payroll of $1,400,000, and at the same rate for any excess. The letter, however, says nothing about the rate to be charged for the excess payroll, and as far as the case shows, the only contract that the complainant had with the agents as to the rate to be charged for the excess was the contract embodied in its policies. We find nothing in the case which indicates that any definite contract was made with reference to the premium on the excess except that contained in the policies. The case clearly shows there was no fraud involved, for it is conceded that the agreement of the prior year was that the higher rate should be inserted in the policies, being the rate which actually was inserted, and that the complainant prior to the issue of the policies now in question was shown a telegram and letter from the insurance company to its agents authorizing a re-

newal at the same rate as the previous year; nor is it denied by the complainant that it knew that the amount of premiums inserted in the policies was greater than the amount which it was actually to pay to the agents. It is conceded that the actual agreement of the preceding year was that the policies should be issued at the rates fixed by the company; but the Alabama agents agreed to accept a smaller sum in satisfaction of the premium. This they might well do, as the difference was made up out of the commissions to which the Alabama agents were entitled from the company. In other words, the contract was a contract for insurance at regular rates with a special agreement of the agents to accept a smaller sum in payment; but there is no evidence in the case to indicate that that agreement to accept a smaller sum in payment of a larger sum was the agreement of the defendant company. Quite to the contrary; the amount paid the company was the exact amount which it was entitled to receive at the policy rates. There is some evidence that the agents informed the company of their action and begged for some concession that would add to their compensation, but this the company refused to grant. It never assented to receive less than the full rates, and never held the agents out as authorized to make a contract different from that contained in the policies. The facts that the policies were not sent to the agents executed in blank, but had to be actually executed by the defendant at the office in Connecticut before they were sent to the Alabama agents for delivery, that when so executed they showed the higher rate of premium and were so accepted by the complainant, convinces us that the complainant was relying for its discount not upon an agreement of the company to issue the policies at a lower rate, for no such agreement was made, but upon the favor of the Alabama agents. Under such circumstances, the natural inference to be drawn by the complainant must have been either that the agents were deceiving their principal in the belief that the policies were negotiated at the full rate as they were written, or were making the discount at their own cost. If we adopt the first alternative, the complainant was party to a scheme to deceive the company; if we adopt the second, which corresponds with the actual facts, the arrangement for a discount was not with the defendant. In either event,

the complainant has no right to relief. It has no right to a reformation, since the policies as issued were in exact accordance with the proposal contained in the letter of June 20th, 1905, and the course of practice pursued in 1904, and the payment required of the complainant for the policies of 1905 and actually made by it was exactly in accordance with the proposal in the letter of June 20th and the practice of the year before. The complainant has no right to rescind for fraud since the policies and the amount paid exactly correspond with the contract. The letter of June 20th, 1905, says nothing about the rate to be charged for the excess payroll, and the testimony is equally silent as to any contract to settle the excess premium at the discount rate. The complainant apparently took it for granted that a discount would be allowed by the agents upon the excess premium. Such a discount was allowed on the excess premium of the previous year, but that was not until October 20th, 1905, nearly four months after the present policies were issued, and even then the statement rendered to the defendant company showed the excess premiums calculated at the full policy rates. It was the agents who then allowed the discount, and allowed it at their own cost. The complainant could not, therefore, have been misled by anything done by the agents in settling the excess premiums on the first year's policies. The case is even stronger against the complainant; for in adjusting the excess premiums, in October, 1905, it turned out that, under one policy, the actual payroll had been less than the estimated payroll, so that the defendant owed the complainant a return premium. This return premium was calculated at the full policy rate, and a receipt therefor at that rate given to the defendant. It is true that in the actual adjustment with the agents, this return premium was figured at the discount rate; but the fact that a receipt was given to the defendant company at the full rate is quite conclusive against the complainant upon the question of fraud.

It is suggested that the complainant is entitled to rescind because the contract as written in the policies is not the contract which it intended to make. After what we have said it is almost superfluous to add that the contract it received is the exact contract it bargained for, that it has been carried out to

the letter by the defendant company and by their Alabama agents, and that the complaint now made by the complainant relates to a matter which was not embodied either in the parol contract or in the contract by letter. What has happened is that the complainant has been disappointed in its expectation that it could settle at a price less than it had agreed by the acceptance of the policies to pay. It may have been justified in entertaining this expectation, but to entitle it to relief it was necessary that it should be at least a term of the parol contract.

For these reasons we think the decree should be reversed and the record remitted to the court of chancery to the end that the bill may be dismissed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL—13.