ARTHUR BERENSON *vs.* ASA P. FRENCH.

Suffolk.          October 21, 1927. — January 7, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Pleading and Practice,* Plea, Appeal, Findings by judge, Rehearing. *Equity Jurisdiction,* Specific performance. *Contract,* Performance and breach, Validity, Waiver. *Waiver. Attorney at Law. Evidence,* Competency, Presumptions and burden of proof.

In a plea to a bill in equity by one attorney at law against another to require the defendant to give the plaintiff a release in accordance with a contract between them in writing and under seal, the defendant alleged that such requirement had been waived by the plaintiff for a good and valuable consideration. At the hearing of the plea on its merits, there was evidence in substance showing that the contract was as to division among several counsel of fees to be awarded by a Federal court in proceedings in which they were coöperating on a contingent basis; that the contract set the defendant's fee at $25,000 and was entered into by reason of representations by the plaintiff, relied on by the defendant, that the court would not award more than $250,000 as the fees for all counsel, although the plaintiff then had reason to believe and did believe that about the sum of $835,000 would be awarded but did not so state to the defendant before the contract was made; that after the contract was made and just before allowance by the court of a decree awarding counsel $833,333, the plaintiff had stated to the defendant in substance that he expected that a much larger fee than $250,000 would be allowed and that he would see that the defendant

received "a fair and equitable share," and the defendant had expressed his gratification. *Held*, that

(1) A finding was warranted that the plaintiff had waived so much of the agreement as fixed the defendant's compensation at $25,000;

(2) Evidence relating to such conduct of the plaintiff was not inadmissible on the single issue raised by the plea;

(3) A sufficient consideration for the waiver was shown in forbearance by the defendant to institute litigation for rescission of the contract by reason of nondisclosure by the plaintiff, who sustained relations of trust and confidence in his dealings with the defendant, of material facts affecting the substance of the contract; it was immaterial whether such a suit would have been successful;

(4) The plea properly was held good in law, and a finding sustaining it on the merits was warranted.

A refusal by a judge, hearing a plea to a bill in equity, to grant requests for findings of fact, is not reviewable upon an appeal from a decree sustaining the plea.

Upon an appeal, with a report of the evidence, from a decree sustaining a plea to a bill in equity, findings and conclusions of fact by the judge will not be disturbed unless clearly wrong.

The denial of a motion for rehearing and reargument upon a plea to the bill in a suit in equity is a matter of discretion.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 16, 1923, and afterwards amended. The bill as amended is described in the opinion.

By order of the court, the suit on November 1, 1923, was transferred to the Superior Court for final disposition.

The defendant filed the plea quoted in the opinion. Upon the allowance by the court of a motion by the plaintiff "that the defendant be ordered to specify upon what he relies as acts or statements constituting a waiver by the plaintiff and upon what he relies as the consideration for the alleged waiver," the defendant filed the following:

"1. Statements and acts relied upon by the defendant as constituting a waiver:

"(a) In connection with a proposed settlement of the Adams suit in December, 1920, at New York, the plaintiff stated to the defendant and others, in substance, that he was satisfied that the amount which would be awarded by the court as fees to counsel, in case the proposed settlement went through, would not exceed $250,000, and might be considerably less; that, accordingly, on that basis, he would ask the plaintiff to accept as his share of the fee, $25,000, and

added, in substance, and thereafter repeated, that in case the award should be considerably larger than the sum he had stated, he would not expect the plaintiff to receive and accept $25,000 as his full share in the fee or to release his claim upon the payment of such amount.

"(b) After the agreement in question had been signed, and shortly before the award was made, the plaintiff stated to the defendant, in substance, that counsel were to receive a very much larger award than he had previously stated to the defendant, and that in accordance with what he had previously stated to the defendant, he would not expect the defendant to accept $25,000 as his share of the fee, and would not ask or expect him to sign a release on the payment of that amount. In the same conversation, the plaintiff said to the defendant, in substance that the award would be so large that the share of the fee that would be coming to the defendant would be a sufficient sum to make him independently rich and enable him to retire from practice if he wanted to.

"(c) The statement above recited, that the plaintiff did not expect the defendant to give a release or to be bound to accept $25,000 as his full share in the fee awarded, was repeated in substance by the plaintiff, both to the defendant thereafter, and, as he is informed, to others.

"(d) Shortly after the payment to the plaintiff of the fee for counsel awarded by the court, and on the same day, the plaintiff gave to the defendant a check for $25,000. On the same occasion, the plaintiff handed to the defendant a check for $15,000, saying in substance that it was a payment on account of the additional amount the defendant was to receive, and that final adjustment would be made in accordance with their original understanding after payment of disbursements and payments to certain other counsel involved. The plaintiff also requested the defendant to state in a letter to the plaintiff the amount which the defendant claimed would be due him under the arrangement.

"Neither on this occasion nor at any time thereafter did the plaintiff request the defendant to sign a release. On the same day, the plaintiff paid to Messrs. Garland and Swacker,

mentioned in said agreement, the amounts set down therein opposite their respective names, and demanded and received releases from each of them. According to the defendant's information and belief, the plaintiff has demanded and received releases signed by all other counsel to whom payments have been made.

"(e) The plaintiff has stated to three or more persons known to the defendant that he has not paid to the defendant all the defendant is entitled to receive; that he has not made any final settlement with the defendant, and that he has intended to pay to the defendant the amount due the defendant upon an equitable basis.

"The above specifications are filed without prejudice to the right of the defendant to introduce evidence of other acts or statements not now known to the defendant but which may hereafter come to his knowledge either before or during the trial.

"2. Consideration for the waiver.

"In no way admitting that a consideration is necessary to make the plaintiff's waiver effective, but, on the contrary, contending that no consideration is necessary, the defendant nevertheless specifies that such consideration or considerations for the plaintiff's waiver existed, and states such considerations:

"(a) The waiver by the defendant of rights accruing to him under said contract;

"(b) The acceptance by the defendant of the plaintiff's waiver and reliance thereon thereafter;

"(c) The forbearance by the defendant in respect of legal proceedings against the plaintiff to enforce remedies growing out of fraud on the part of the plaintiff;

"(d) The consideration of the original contract itself;

"(e) The mutual undertakings of the plaintiff and defendant in rescinding said contract."

The plea was heard by *Morton*, J., by whose order an interlocutory decree was entered stating that the case had been heard "on the sufficiency in law" of the plea and adjudging "that said plea be and is hereby allowed." The case then was heard upon the amended bill and the plea and specifica-

tions by *McLaughlin,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 35 (1905). Material evidence and facts found by the judge are stated in the opinion.

After the judge had filed a statement of his findings and rulings, the plaintiff moved for a rehearing and a reargument on the grounds that the issue of fraud was not open to be tried on the plea; that the finding by the judge was based upon a finding that the contract was obtained by fraud and that the defendant had a right to avoid it on this ground and waived that right as a consideration for a new promise: "Without this finding it is apparent that the court would have found that the promise of the plaintiff was without consideration and that the plea was bad. The evidence does not support the finding that the contract was obtained by fraud."

The motion was denied. A final decree dismissing the bill was entered on January 7, 1927. The plaintiff appealed from the interlocutory decree adjudging the plea good, from the denial of the motion for a rehearing and a reargument, and from the final decree.

*C. F. Choate, Jr.,* (*R. Wait* with him,) for the plaintiff.

*E. O. Proctor,* for the defendant.

BRALEY, J. It appears from the allegations of the bill as amended that the plaintiff, acting as counsel for certain minority stockholders of the New York, New Haven and Hartford Railroad Company, brought a suit in equity in the District Court of the United States for the Southern District of New York against some of the former directors of the company to recover moneys alleged to be due the company because of their personal misconduct. The plaintiff, in conducting the litigation, was assisted by the defendant, also a member of the bar. During the proceedings, negotiations for a settlement were begun and through the sole efforts of the plaintiff a large amount of money was obtained in settlement from the defendants for the benefit of the company. While negotiations were pending, and with knowledge that a settlement would be effected, the plaintiff and the defendant — together with other persons,

all counsel associated with them — entered into an agreement under seal on December 20, 1920, which, omitting the preamble, described the litigation and the services of the plaintiff and his associate counsel, including the defendant, and the expectation of the parties that $2,500,000 was to be received in settlement of the litigation, and set forth the following agreements:

"1. The said Arthur Berenson shall prepare and file with the court a petition for the allowance of counsel fees, disbursements, costs, expenses and any other proper allowances, which petition shall be joined in, assented to or otherwise acted upon as may be required, by the other parties hereto and the parties agree that said petition shall be for a sum not less than one-third of the amount of the settlement. In the event that the parties are required by the rules of court or otherwise by law to make separate applications for the aforesaid allowances, such applications shall be made by each party and any sums allowed by the court shall be pooled by all the parties and placed in a common fund upon the agreements hereinafter set forth. The parties agree to render all necessary assistance in the preparation and presentation of the aforesaid petition or petitions.

"2. The parties agree to and do hereby constitute and appoint Arthur Berenson their true and lawful attorney for the purpose of collecting the allowance or allowances and for that purpose he may execute, sign, seal, acknowledge and deliver for and in their behalf or any of them due acquittances, releases or any other written instrument under seal or otherwise as may be required.

"3. Out of the allowances which may be made by the court and when the same shall have been received by Arthur Berenson, he shall pay all disbursements, expenses, charges and any other claims and any sum or sums which the court shall by its decree require and there shall also be paid the following sums in full and final payment for all services rendered by them or each of them as aforesaid, to wit:

"Asa P. French, twenty-five thousand dollars

"Francis P. Garland, twenty-five thousand dollars

"Frank M. Swacker, thirty-five thousand dollars.

"The said Arthur Berenson shall pay Lawrence Berenson and Bernard Berenson such sums as shall be agreed upon by them and said Lawrence Berenson and Bernard Berenson do hereby release said French, Garland and Swacker of and from all claims whatsoever. Upon the payment to the parties hereto of all the sums which shall or may be due them hereunder they shall execute and deliver to Arthur Berenson releases in full of all demands.

"4. In the event that the said Arthur Berenson shall deem the said allowance or allowances unsatisfactory in amount or otherwise, the said French, Garland and Swacker shall not receive the aforesaid sums but they shall meet and determine what amounts be paid to said French, Garland and Swacker, having regard to all the recitals and agreements herein contained, the amount which the court has allowed and all of the surrounding circumstances and facts and if the parties cannot then agree, the matter shall be referred to Judge Hough of the United States District Court or to any other person whom he shall appoint as an arbitrator, the decision of either to be final and binding upon all parties hereto as to the amount or amounts which each of them shall receive.

"5. In the event that any suit or suits shall be brought against any or all of the parties hereto, the parties agree that they will render all necessary assistance and aid in the defense of said suit or suits.

"6. The parties agree to do all in their power to expedite the payment of the aforesaid fund and to give all aid toward that end."

It is alleged that the plaintiff, having received the money, paid to the defendant $25,000 which was received and retained by him in full and final payment for all services rendered. But the defendant declined to execute and deliver the release as provided in the agreement, and on April 2, 1923, brought an action at law to recover compensation for services claimed to have been rendered in excess of the amount received for which he had not been paid. The plaintiff prays that the prosecution of that action be enjoined

and that the defendant be ordered to execute and deliver to the plaintiff a release in accordance with the agreement of settlement.

The original bill was filed June 16, 1923, and the amendment to the bill was allowed March 5, 1924. On September 19, 1924, the defendant filed the following plea: "The respondent for his plea to the petition as amended in the above entitled cause alleges that the petitioner has for a good and valuable consideration expressly waived any right to demand or receive such release." The plaintiff, thereupon, moved that the defendant be ordered to specify upon what he relied as acts or statements constituting a waiver and upon what he relied as a consideration for the alleged waiver. The motion was allowed without any objection by the defendant who, in compliance therewith, filed specifications stating the acts relied on as constituting a waiver and the consideration therefor. The plea as amplified by the specifications was the plea on which the defendant relied to defeat the bill, and the interlocutory decree, adjudging the plea to be sufficient in law, was entered rightly. *Harrington* v. *Harrington*, 107 Mass. 329, 334. *Dorsey* v. *Corkery*, 227 Mass. 498, 500. The case thereafter came on for hearing on the merits, the court sustained the plea, and, a decree having been entered dismissing the bill, the plaintiff appealed.

The judge was not required to make findings of fact as requested by the plaintiff, and his failure to do so is not reviewable. *Warfield* v. *Adams*, 215 Mass. 506.

The burden of proving the allegations of the plea — that the plaintiff had waived his right to demand and receive a release from the defendant and that the waiver was based on good consideration — rested on the defendant. *Torrey* v. *Adams*, 254 Mass. 22. It is argued by the plaintiff that on the evidence, which is fully reported, the defendant failed to sustain the plea and his request for a ruling to that effect should have been given. The plaintiff also contends that evidence, introduced subject to his exception by the defendant, tending to show that the plaintiff acted fraudulently, should have been excluded because no issue of fraud was

raised by the plea.    While the issue raised must be confined to a single point, facts may be proved having a tendency to establish it; even if it is the issue only that must be single, a defence offered by way of a plea consists of a variety of circumstances, and, if they all tend to a single point, the plea is good.    *Chapin* v. *Coleman,* 11 Pick. 331.    *Crease* v. *Babcock,* 10 Met. 525, 543.    *Rhode Island* v. *Massachusetts,* 14 Pet. 210, 259.    *Rowe* v. *Teed,* 15 Ves. 372.    Beames, Pleas in Equity, 10.

The questions of waiver and of consideration were questions of fact.    *Farlow* v. *Ellis,* 15 Gray, 229.    *Suburban Land Co. Inc.* v. *Brown,* 237 Mass. 166, 168.    *Hastings* v. *Lovejoy,* 140 Mass. 261.    And in reviewing evidence the conclusions of the trial judge will not be disturbed unless plainly wrong.    *Revere Water Co.* v. *Winthrop,* 192 Mass. 455, 459.

We are satisfied on an examination of the record that the judge's findings of fact are well grounded.    The suit against the directors had been pending for several years during which various interlocutory questions were considered by the court, and early in December, 1920, a peremptory order was entered assigning the case for trial on the merits in the following February.    The plaintiff had retained the defendant, Mr. Francis P. Garland and Mr. Frank M. Swacker, all of whom were counsellors at law, to assist him in the preparation and prosecution of the case which never came to trial because of a settlement negotiated by the plaintiff with Mr. Lindabury, of counsel for the directors.    The negotiations for settlement were pending when a conference was held in New York attended by the plaintiff Berenson, the defendant Mr. French, Mr. Garland, Mr. Swacker, and Mr. Bernard and Mr. Lawrence Berenson, members of the bar who also were associated with the plaintiff, and the question of settlement and of preparations for trial were discussed, which resulted in a situation from which it appeared reasonably certain that the directors would pay the $2,500,000 in compromise, and a second conference was held December 19, 1920, attended by all counsel, and the question

of their compensation was considered and the amount which should be paid to the plaintiff and his associates. It was assumed that the court would name a round sum for compensation of counsel to be deducted from the amount received from the directors, and it was agreed that the allowance for counsel should be paid to the plaintiff who then would pay his associates the sums agreed upon and retain the remainder as compensation for himself and to settle any claims of counsel who represented certain stockholders who had not employed the plaintiff. It was understood that the plaintiff should have the largest share because the compromise had been accomplished through his efforts. The suit, however, had been brought on the understanding that if it was not successful no compensation was to be charged, and, although no allowance had been made by the court, an agreement had been prepared fixing the amounts which each of the plaintiff's associates would accept in satisfaction for services.

It was specifically found that "On the day previous to the meeting, Mr. Berenson informed Mr. French that he had been negotiating with Mr. Lindabury for the settlement of the suit and that he was satisfied that the court would not allow more than $250,000, and perhaps might award less; and on the day of the meeting Mr. Berenson told Mr. French and the others present that he had reason to believe that the maximum amount which would be allowed by the court would be $250,000 and that it might be less. On the faith of his belief that this statement was made in good faith, and that Mr. Berenson's belief was based on information acquired by him in the course of his dealings and negotiations in respect to settlement, Mr. French agreed at this meeting to accept $25,000 in full for services rendered, Mr. Garland agreed to take $25,000 and Mr. Swacker $35,000, leaving it to Mr. Berenson to put the agreement in writing with the added stipulation that if the amount allowed was unsatisfactory to Mr. Berenson, the parties should meet and agree upon what amounts should be paid to each, and if they could not agree, the matter should be left to Judge Hough or

any person whom he should appoint as an arbitrator. This latter clause was to be inserted to cover the contingency that the allowance might be less than $250,000.

"Mr. French returned to Boston and on the following Monday or Tuesday, December 20 or 21, received a letter from Mr. Berenson, delivered by his secretary, enclosing an agreement for Mr. French to sign embodying the terms of the oral agreement previously arrived at in New York. In the interval, it should be said, between Mr. French's departure for Boston and receipt of this letter, Mr. Lindabury for the directors formally offered Mr. Berenson to settle the case for $2,500,000 and the offer had been accepted. Mr. French signed the contract and handed it to the secretary who forwarded it to Mr. Berenson in New York. This is the instrument, by the terms of which Mr. French agreed to accept the sum of $25,000 out of the allowance to be made by the court, Mr. Garland $25,000 and Mr. Swacker $35,000 in full and final payment for all services rendered, and upon payment to execute and deliver to Mr. Berenson a release in full of all demands, with a provision for readjustment and arbitration if less than $250,000 were allowed. A copy of the contract is annexed to the bill.

"In anticipation of the final proceedings for confirming the settlement and obtaining the allowance by the judge which were to come up before Judge Hough the next morning, another meeting of the attorneys for the plaintiffs was arranged to take place in New York on December 27. On the evening of that day Mr. Arthur Berenson, his brothers Bernard and Lawrence, Mr. Garland and Mr. French met in that city. Mr. French was asked by his associates to prepare the petition. Reading it aloud as he wrote, no question arose until he arrived at the point of stating the sum which they should ask the court to fix as their compensation. Stopping there, he asked: 'What amount shall I fill in?' Mr. Arthur Berenson said, 'Make it a third.' Both Mr. French and Mr. Garland said they thought it excessive and that it might prejudice them with the court, and suggested that it be made smaller. Mr. Arthur Berenson then said, 'Put in a third; I know what I am talking about,' whereupon

Mr. French inserted the sum of $835,000, asking for their expenses and disbursements in addition.

"Before going to court the next morning, Mr. French, Mr. Garland and the Berensons met in Mr. Lawrence Berenson's office where the petition which Mr. French had drawn the night before was to be copied and put in final form. While this was going on, Mr. Arthur Berenson invited Mr. French into an adjoining office, and there said to him, in substance, that he was not going to ask him to sign any release; that they were going to get a very large award in the case; that independently of Mr. French's services generally in the case, he recognized an obligation to him personally, and would see that he received, in the event of the award being large, a fair and equitable share from Mr. Berenson's share after he, Mr. Berenson, should discover what the charges against the fund might be; and Mr. French, in some form of language, expressed his gratification. On their way to the court house, Mr. French and Mr. Berenson walking together, the others being some distance behind, Mr. Berenson again spoke of the matter, saying, in substance: 'We are going to get a large award, larger than I have made any suggestion of heretofore, and I am going to be able to pay and am glad that I am going to be able to pay you a sufficient sum to enable you, if you want to, to retire from the practice of law and live comfortably for the rest of your life.' Mr. French again expressed his thanks. At the hearing in the judge's chambers, Mr. French, Mr. Berenson and his brothers, Mr. Garland, Mr. Lindabury, counsel for the former directors and Mr. Morgan O'Brien, counsel for the New Haven road, were present, and the settlement of the suit was approved. Mr. Berenson then presented and read the petition for the allowance of fees. The judge asked both Mr. Lindabury and Mr. O'Brien if they had any suggestion to make in regard to the amount, and both said they were willing to leave the matter with the court. Thereupon the judge, either reading from a previously prepared paper or speaking without such aid — a memorandum expressing his views was filed in the papers — after summarizing the services of the petitioners, said that he saw no reason why the

usual rule applicable in that jurisdiction to recoveries of sums largely speculative by counsel operating on contingent fees, should not be resorted to in the case before him, and thereupon awarded to the petitioners $833,333.33, one third of the amount recovered, but without expenses or disbursements, directing that it be paid to Mr. Berenson, the petitioners having stipulated in their agreement that he should collect the entire sum. A check for $2,500,000 was then delivered by the attorney for the former directors to the attorney for the company, and the company's check for $833,333.33 was delivered by its attorney to Mr. Berenson. Mr. Berenson deposited it to his own credit, drew a check to Mr. French's order for $25,000 and gave it to him; then drawing another check for $15,000, said in substance to Mr. French, 'I am going to draw you another check for $15,000 in accordance with what I said to you this morning on account. Of course, it is impossible to tell what the demands of others against the fund may be, but I want to give you this additional check.' Mr. French took it in his hand and said, 'Does Frank Garland know about this, does he know anything about the arrangement which you have made with me?' On Mr. Berenson's replying that he did not, Mr. French said he thought he would not take it until he had an opportunity to explain the situation to Mr. Garland, and handed it back, subsequently cashing the $25,000 check. On this occasion Mr. Berenson again said he would not ask Mr. French for a release, and never asked for it before the bringing of this suit. At this last interview he told Mr. French that for the purpose of making up his income tax, he wished he would write him a letter stating the amount which he claimed to be due. Mr. French wrote saying that he expected a much larger sum than that which was paid or tendered. There was further correspondence at the close of which Mr. Berenson declined to pay any additional amount to Mr. French except $1,700 for Mr. French's expenses and disbursements, and this was paid without prejudice to the rights of either. Subsequently, Mr. French brought an action at law against Mr. Berenson to recover for the value of his services and the question in this suit is whether Mr.

Berenson is entitled to the release provided for in the written agreement.

"Upon all the evidence, I find that when Mr. Berenson told Mr. French he was satisfied that not more than $250,000 would be allowed, and later in the presence of Mr. French, Mr. Garland and Mr. Swacker, said that he had reason to believe that the maximum amount which would be allowed would not be more than $250,000, he in fact was satisfied and believed and had reason to believe that the court would allow a sum greatly in excess of $250,000, and that through some source not disclosed by the evidence, he had acquired information which caused him to believe when the contract was signed with the defendant and his other associates, that the court would allow the sum which subsequently it did allow. I am the more strongly convinced of this because Arthur Berenson, though present in the court room throughout the hearing, did not take the witness stand, nor did either of his brothers."

The judge also had before him the testimony of Mr. Garland that subsequent to the agreement he demanded $50,000 for his services and was paid by the plaintiff the sum of $40,000.

These findings were ample to sustain the defendant's contention and the judge's conclusion that the plaintiff had waived so much of the agreement as fixed the defendant's compensation at $25,000. *Farlow* v. *Ellis*, 15 Gray, 229, 232. *Suburban Land Co. Inc.* v. *Brown*, 237 Mass. 166, 168.

The remaining question is, whether there was any consideration on which the waiver could stand.

It is manifest that the plaintiff sustained relations of trust and confidence in his dealings with the defendant and with Mr. Garland and Mr. Swacker as shown not only by their conferences and mutuality of work for their benefit in common, but by the wording of the fourth paragraph of the agreement. The agreement, however, even if it was obtained by the fraudulent nondisclosure of material conditions on the part of the plaintiff, was not void. It was voidable only at the election of the defendant and unless rescinded "a voidable contract imposes on the parties the same obli-

gations as if it were not voidable." Williston, Contracts, § 15. *Metcalf* v. *Williams*, 144 Mass. 452, 454. *William B. Bierce Ltd.* v. *Hutchins*, 205 U. S. 340, 346. The defendant, therefore, when he became aware of the actual situation at the time when the plaintiff promised to pay him a larger amount, had the right to bring a suit in equity for rescission of the agreement, and his forbearance to institute such litigation furnished a sufficient consideration for the waiver. It is immaterial whether such a suit would have been successful. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450, 453, and cases cited. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 477. *Arnold* v. *Maxfield*, 223 Mass. 47. *Osborne* v. *O'Reilly*, 15 Stew. (N. J.) 467, 480.

We find no error in the admission of evidence, or in the refusal of the plaintiff's requests in so far as they were not given, or in the denial of the plaintiff's motion for a reargument which was a matter of discretion. *Foss* v. *Atkins*, 208 Mass. 510, 511. It results that the interlocutory decree and the order are affirmed, and the final decree is also affirmed with costs.

*Ordered accordingly.*