HARRY SANDS, appellant, v. IOWA MUTUAL INSURANCE COMPANY, a corporation, appellee.

No. 48201.

(Reported in 55 N.W.2d 572)

NOVEMBER 11, 1952.

Irving D. Long, of Manchester, for appellant.

Swift & Swift, of Manchester, for appellee.

GARFIELD, J.—Plaintiff sued at law for $7000 insurance on a dwelling destroyed by fire. Defendant-insurer admitted liability for $5500, plus $16.32, excess premium paid by plaintiff. By agreement trial was in equity. The facts were stipulated. The trial court held defendant liable for only the $5516.32. Plaintiff has appealed.

On December 6, 1948, defendant issued to plaintiff its fire insurance policy for $2500 on a dwelling. Soon afterwards plaintiff improved the dwelling. On January 3, 1949, the insurance was increased to $4000. On April 15, 1949, defendant issued an endorsement again increasing the insurance which stated the amount of the increase as $3000, the total amount of insurance in one place as $5500 and in another place as $7000, and that the premium due December 6, 1949, to extend the insurance would be $38.08. This is the correct annual premium upon $7000 insurance. The figures $3000, $7000 and $38.08 were inserted in the endorsement through error of the scrivener.

Plaintiff orally requested both these increases from defendant's agent Kerper who transacted plaintiff's insurance business and kept all his policies. However, it seems plaintiff merely asked Kerper to increase the insurance without stating the amount desired. After Kerper received the endorsement of April 15, 1949, he asked defendant to correct it to show the increased coverage to $5500 rather than $7000. Defendant then issued a corrected endorsement also dated April 15, 1949, which gave the

amount of the increase as $1500, total coverage as $5500 and the extension premium due December 6, 1949, as $29.92, the correct annual premium upon $5500 insurance.

On December 6, 1949, defendant issued its renewal certificate which recited the amount of insurance as $5500 and the premium as $38.08 (correct premium upon $7000 coverage). A like renewal certificate was issued December 6, 1950. Kerper billed plaintiff for $38.08 for each of these two extensions and plaintiff paid this amount each time.

The dwelling burned March 9, 1951. Plaintiff did not know the amount of insurance in force until he asked Kerper. Soon after the fire defendant's adjuster and Kerper called on plaintiff who executed a sworn proof of loss claiming $5500 insurance. The adjuster then noticed the amount of premium set out in the two renewal certificates, told plaintiff there must be a mistake and he would leave the adjustment open until it could be ascertained. Before this plaintiff was not aware of any discrepancy in the first endorsement dated April 15, 1949, or the renewal certificates. It is not claimed there was fraud of any kind on the part of either party.

Defendant later admitted liability for only $5500 plus $16.32 total excess premiums collected for the two renewals. Plaintiff, however, claimed he was entitled to $7000 and sued therefor. Upon the above stipulated facts the trial court held defendant was liable for only the $5516.32.

Plaintiff complains of what he says are erroneous findings of fact by the trial court that plaintiff requested two increases of $1500 each in his insurance and that billing plaintiff for the renewal premiums at $38.08 was due to mistake of the agent Kerper. While these findings are not in strict accord with the stipulated facts they are not necessary to the judgment. If the judgment is right and adequately supported by other findings which are not assailed, and we think it is, any error in the two findings above referred to is deemed not prejudicial and entitles plaintiff to no relief here. Roth v. Headlee, 238 Iowa 1340, 1348, 29 N.W.2d 923, 927, and citations; Sjulin v. Clifton Furniture Co., 241 Iowa 761, 766, 41 N.W.2d 721, 725.

Plaintiff argues that since the renewal certificates recite the premium as $38.08 (the correct premium for $7000 insur-

ance) and the amount of insurance as $5500 they are ambiguous and fairly susceptible of two different constructions under one of which—the one more favorable to the insured—he is entitled to recover $7000. The abstract rule of law plaintiff invokes is well recognized. See Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 678, 17 N.W.2d 414, 417, and citations; Struble v. Square Deal Ins. Co., 237 Iowa 1155, 1159, 24 N.W.2d 441, 442. However, the rule should not be applied to contravene the intention of the parties. Ibid.

We think the rule relied upon is not applicable here. The policy was for $2500. Under the corrected endorsement dated April 15, 1949, attached to the policy the insurance was increased to $5500. The amount of the increase and the extension premium due December 6, 1949, upon $5500 insurance are correctly stated in that endorsement. Both renewal certificates recite "the above numbered policy is hereby renewed (subject to the original conditions and subsequent endorsements, if any) for one year." Each certificate states in large letters near the top, "This certificate renews your policy No. F175003." Each renewal certificate plainly gives the amount of insurance as $5500. The renewal certificates are not rendered ambiguous as to the amount of insurance by giving the premium as $38.08.

As with contracts generally, the cardinal principle in the construction of insurance contracts is that the intention of the parties should control. Iowa Electric Co. v. Home Insurance Co., supra, 235 Iowa 672, 677, 678, 17 N.W.2d 414, 416, and citations.

It was stipulated at the trial that the corrected endorsement dated April 15, 1949, reciting the total insurance as $5500 expressed defendant's true intention as to the amount of insurance. There is no claim any additional insurance was requested after that time. It is not claimed plaintiff ever intended to take out more than $5500 insurance. Before the adjuster told plaintiff after the fire there was a mistake in the amount of premium for the renewals plaintiff had no thought of claiming more than $5500, the amount he did claim in his sworn proof of loss. It does not appear defendant was aware of its mistake until after the fire.

Plaintiff was not misled into thinking, before the fire, there was $7000 insurance. The error in the amount of premium in the renewal certificates did not prejudice plaintiff except that he paid a total of $16.32 too much for the renewals. This excess is included in the judgment. To permit plaintiff to profit by this error, and to penalize defendant, to the extent of $1500 would be manifestly unjust and would require a construction of the contract contrary to that intended by both parties.

Plaintiff argues that the collection of an annual premium of $38.08 for $5500 insurance is excessive and unfairly discriminatory. For this reason he says he is entitled to recover $7000, the amount of insurance the premium paid by him should have purchased.

Section 515B.1, Code, 1950, states the purpose of chapter 515B, entitled "Fire and Marine Insurance Rates", is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory * * *." Section 515B.3 states in part (1b), "Rates shall not be excessive, inadequate or unfairly discriminatory."

■ We may assume without so deciding that the premium defendant collected for these renewals was excessive and unfairly discriminatory so the commissioner of insurance might have imposed a penalty of $50 against defendant for so doing, as provided by section 515B.16. But no statute or decision has come to our attention to support plaintiff's argument that the collection of the excess premium under such facts as shown here entitles plaintiff to recover more than he was awarded. We think the argument is unsound.

Neither party has cited any decision factually in point and we have found none. However, our conclusion on the whole case finds support on principle in Poindexter v. Equitable Life Assur. Soc., 127 W. Va. 671, 34 S.E.2d 340, 161 A. L. R. 990, and annotation 1000; Neary v. General American Life Ins. Co., 140 Neb. 756, 1 N.W.2d 908; United States F. & G. Co. v. Beckman, 278 Mich. 516, 270 N.W. 770; Schmidt v. Prudential Ins. Co. of America, 235 Wis. 503, 292 N.W. 447; Mates v. Penn Mutual Life Ins. Co., 316 Mass. 303, 55 N.E.2d 770; Gray v. Supreme Lodge, Knights of Honor, 118 Ind. 293, 20 N.E. 833.

See also annotation 125 A. L. R. 1058; 29 Am. Jur., Insurance, section 247. ·

It is true the issue of reformation is involved in these authorities and we have not deemed it necessary to discuss such issue. Defendant asked for reformation here but the trial court apparently felt it was unnecessary to grant such relief. We concur in this view. We may observe, however, that reformation has been frequently granted an insurer under facts somewhat analogous but less favorable to it than those now before us. See authorities last above.—Affirmed.

All JUSTICES concur.