Frances M. FREESTONE, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civ. No. 544.

United States District Court
N. D. Iowa, Cedar Rapids Division.
March 26, 1956.

Loren M. Hullinger, Hullinger & Hullinger, Cedar Rapids, Iowa, for plaintiff.

E. H. Wadsworth, Barnes, Wadsworth, Elderkin & Locher, Cedar Rapids, Iowa, for defendant.

GRAVEN, District Judge.

The plaintiff is a citizen of the state of Iowa residing at Cedar Rapids, Linn County, Iowa. The defendant is an insurance corporation, organized and existing under the laws of the state of New Jersey, with its home office at Newark, New Jersey. The amount in controversy, exclusive of interest and costs, is in excess of $3,000.

On July 1, 1946, at its home office the defendant executed its policy No. 14 182 862 insuring the life of Harold P. Freestone of Cedar Rapids, Iowa. The insured died February 14, 1954, as a result of an accident. The plaintiff who is his widow was the primary beneficiary of the policy. In this action she seeks to recover the sum of $13,200 claimed to be due her under the provisions of the policy. The defendant in its answer admits that the policy was in full force and effect at the time of the death of the insured, that proper proof of death was made, and that the death of the insured was caused by accidental means but claims that the amount due the plaintiff is the sum of $2,400 and not $13,200.

In the policy declared upon by the plaintiff, the amount of the benefit in the event of the death of the insured by accidental means appears as twelve thousand dollars. In its answer and counterclaim the defendant alleges that the amount of the benefit intended by the parties was the sum of twelve hundred dollars and that as a result of a clerical error in the preparation of the policy the amount of the benefit appears as twelve thousand dollars and asked that the policy be reformed accordingly. The defendant admits liability under the policy in the sum of two thousand four hundred dollars. The plaintiff made a motion to strike the defendant's defense of mistake and its claim for reformation. The plaintiff in that motion alleges, inter alia, that because of the incontestable clause in the policy the defendant may not now assert the claim of mistake and may not now have the policy reformed.

The insured, Harold P. Freestone, in writing applied to the defendant for an insurance policy on his life in 1946.

Portions of that application, here pertinent, appear as follows:

"10a What kind of policy is desired?

"*Whole Life Paid Up at Age 85*

\*   \*   \*   \*   \*   \*

"11a Is Accidental Death Benefit desired?

"*Yes*

\*   \*   \*   \*   \*   \*

"16 AMOUNT OF INSURANCE

"*$1200.00*

\*   \*   \*   \*   \*   \*

"I AGREE THAT: \* \* \* (5) if at the time of signing this application the full first premium is paid, the insurance shall be deemed to have taken effect as of the date of Part 1 or 2 of this application, whichever is the later, unless otherwise specifically requested in this application, provided the application is approved and accepted by the Company at its Home Office in Newark, New Jersey, in accordance with the plan, premium and amount of insurance applied for.

\*   \*   \*   \*   \*   \*

"Dated at *Cedar Rapids* this *17* day of *June* 19*46*

(Signed) *Harold P. Freestone.*"

The portions of the application set forth above were in the printed application form supplied by the defendant, except for the italicized words which were in handwriting.

Pursuant to this application, the defendant issued to the insured the policy in question which provided, in part:

"In Consideration of the Application for this Policy and of the payment of the premiums as provided herein, insures the life of the Insured, subject to the provisions of this Policy, for the amounts stated herein, payable as hereinafter specified.

"The Insured under this Policy is *Harold P. Freestone.*

"The Face Amount of Insurance is—*Twelve Hundred*—Dollars.

\*   \*   \*

"The Benefit in Event of Death by Accidental Means as Limited and Defined Herein, in addition to the amount of insurance otherwise payable, is—*Twelve Thousand*—Dollars and is payable, subject to the provisions of this Policy, to the Beneficiary. The premium specified below includes an extra premium of $.*43* for this Benefit.

"The *Quarter-Annual* Premium of—*Nine And 86/100*—Dollars is payable on the delivery of this Policy, the receipt of which premium is hereby acknowledged, and a like amount is due on the *1ST* day of each *October, January, April And July* after the date of issue of this Policy until premiums have been paid for a period equal to eighty-five years less the years of the insuring age of the Insured, or until the prior death of the Insured. \* \* \*"

The provisions set forth above appeared in printing in the regular policy form, supplied and used by the defendant, but the italicized words were typed in the blank spaces that were provided. The defendant alleges that the extra premium rate of 43 cents specified in the provision relating to the benefit in case of death by accidental means is its regular premium rate for a twelve hundred dollar benefit in such case. Among the other provisions appearing in the policy is the so-called "incontestable clause." It is as follows:

"Incontestability.—This Policy shall be incontestable, except for default in payment of premium for more than thirty-one days, after it has been in force during the lifetime of the Insured for two years from the date of issue hereof."

The plaintiff in her motion and the parties in their written briefs and arguments in connection with that motion have raised a number of questions. The Court is of the view that the only question properly determinable at this time is whether in the light of the incontestable clause in the policy the defendant may assert a claim for reformation of

the policy because of the claimed clerical error in writing it up. This opinion relates to that question.

■ The first question that presents itself is what law is applicable. In this case jurisdiction is based upon diversity of citizenship. Under the rule of Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477, this Court must follow the conflict of laws rule of the Iowa Supreme Court. The parties in their briefs have at least tacitly regarded the Iowa law as being applicable. In the present case the policy application was mailed from Iowa to New Jersey for acceptance, whereupon the policy itself was mailed from New Jersey for delivery in Iowa. There is no provision in the policy or application stating that it was not binding until delivery. In the application it is stated that unless otherwise specifically provided the insurance shall be deemed to have taken effect as of the date of the policy provided the application is approved and accepted by the company at its home office in Newark, New Jersey. The Iowa Supreme Court follows the rule that a contract is deemed to have been made in the state where the last act necessary to make it a binding obligation is done. See Chicago, R. I. & P. R. Co. v. Lundquist, 1928, 206 Iowa 499, 221 N.W. 228, 230, certiorari denied, 1929, 278 U.S. 658, 49 S.Ct. 187, 73 L.Ed. 566; County Sav. Bank v. Jacobson, 1927, 202 Iowa 1263, 211 N.W. 864, 865. See also Fire Ass'n of Philadelphia v. Allis Chalmers Mfg. Co., D.C.N.D.Iowa 1955, 129 F.Supp. 335, 350, and Haverly v. Union Construction Co., 1949, 236 Iowa 278, 18 N.W.2d 629, 633. In this case apparently the last act necessary to be done to make the policy a binding contract, i. e., the acceptance of the application by the defendant, took place in New Jersey. In the case of Tuttle v. Iowa State Traveling Men's Ass'n, 1905, 132 Iowa 652, 104 N.W. 1131, 7 L.R.A.,N.S., 223, an application for insurance by a resident of Missouri to an Iowa insurance company, which became effective upon acceptance at the insurer's home office in Iowa, was held to be an Iowa contract. It could well be that the Iowa Supreme Court would consider that the law of New Jersey was the applicable law in the present case.

Both Iowa and New Jersey have statutes relating to the incontestability of life insurance policies. Iowa Code Section 508.28 (1954), I.C.A., in part, provides:

"* * * policies [the forms of which are approved by the commissioner of insurance] so written shall be incontestable for any reason except for nonpayment of premiums after two years from date of issue."

Similarly, N.J.S.A. 17:34–15 requires the following provision to be inserted in life insurance policies issued by companies of that state:

"c. That the policy shall constitute the entire contract between the parties and that after it has been in force during the lifetime of the insured a specified time not later than two years from its date, shall be incontestable, except for nonpayment of premiums and for violation of its express conditions, if any, relating to hazardous travel, residence or occupation, in which case the liability of the company may be limited to a definitely determinable reduced amount, which shall not be less than the full reserve for the policy and any dividend additions, and except also, at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability, and provisions which grant additional insurance specifically against death by accident."

■ New Jersey follows the well settled rule of law that an insurance company may have reformation in the case of mutual mistake. Insurance Co. of North America v. Cleveland, 1920, 91 N.J.Eq. 371, 110 A. 582. See Metropolitan Life Ins. Co. v. Asofsky, D.C.N.J. 1941, 38 F.Supp. 464; Sloss-Sheffield Steel & Iron Co. v. Aetna Life Ins. Co.,

1908, 74 N.J.Eq. 635, 70 A. 380, reversed on another ground, 1909, 75 N.J.Eq. 545, 73 A. 228.

In the fairly recent case of Sands v. Iowa Mut. Ins. Co. of De Witt, 1952, 244 Iowa 16, 55 N.W.2d 572, at page 573, the Iowa Supreme Court stated:

"As with contracts generally the cardinal principle in the construction of insurance contracts is that the intention of the parties should control."

In that same case that Court further stated, 55 N.W.2d at page 574, that in an appropriate situation reformation of the policy might be had.

For the purpose of ruling on the plaintiff's motion to strike, it has to be assumed that it was the intent of the parties that the accidental death benefit was to be in the sum of twelve hundred dollars and that through a clerical error in writing up the policy the amount of that benefit appears as twelve thousand dollars.

It seems clear that both under the Iowa law and the New Jersey law, apart from the incontestable clause, the defendant, if it establishes the facts pleaded by it, would be entitled to reformation. Counsel have not cited any Iowa cases dealing with the effect of the incontestable clause where an insurance company seeks to reform a policy because of mutual mistake, and none have been found. The case of Equitable Life Assur. Soc. of United States v. Rothstein, 1937, 122 N.J.Eq. 606, 195 A. 723, affirmed per curiam, 1938, 123 N.J.Eq. 591, 199 A. 43, had to do with a policy which contained an age adjustment provision. The insured was born July 25, 1870. In the application and in the policy it was stated that he was born October 16, 1874. The insurance company brought an action to reform the policy so that it was in accord with the true age of the insured. Reformation was granted. That case is frequently cited as holding that the incontestable clause does not apply to the equitable remedy of reformation. See Prudential Ins. Co. of Ameri-

ca v. Strickland, 6 Cir., 1951, 187 F.2d 67, 71; Richardson v. Travelers Ins. Co., 9 Cir., 1948, 171 F.2d 699, 7 A.L.R.2d 501, and Mates v. Penn Mut. Life Ins. Co., 1944, 316 Mass. 303, 55 N.E.2d 770; 1949 Ins.Law Journal 489. Since reformation in the Rothstein case was made under an express provision of the policy providing for age adjustment, that case is not strictly in point on the question of the effect of the incontestable clause where an insurance company seeks reformation because of mutual mistake. If it be assumed, as the parties apparently have so done, that the Iowa law is applicable, or if it be assumed that the New Jersey law is applicable and that the question is an open one in that state, consideration should then be given to the decisions by other courts. Consideration will first be given to the federal court decisions dealing with the question where there were no cases squarely in point in the applicable decisional law. The federal courts are not in agreement as to the rule to be followed in such cases. The leading case in support of the plaintiff's position and the case most relied upon by her is the case of Richardson v. Travelers Ins. Co., 9 Cir., 1948, 171 F.2d 699, 7 A.L.R.2d 501. In that case the insured in 1926 made application for what was called a " 'Uniform Premium Plan' " policy. By mistake in the home office the insured was issued what was known as a " 'Pension Policy, age 65.' " The insured paid premiums based on the " 'Uniform Premium Plan' " policy which were somewhat over one-half of the premiums normally paid on the "Pension" policy. The benefits at maturity in the "Pension" policy were twice the amount of the benefits under the " 'Uniform Premium Plan' " policy. In 1946 the insurance company discovered the mistake and brought an action to reform the policy. The policy contained an incontestable clause. The trial court granted reformation. On appeal the trial court was reversed, the Ninth Circuit stating, 171 F 2d at page 701:

"Assuming that the mistaken provision, in the absence of an incon-

testable clause, could be reformed, nevertheless, it along with the remainder of the provisions constituted a contract which bound the parties until rescinded, reformed or otherwise modified. See, Berenson v. French, 262 Mass. 247, 159 N.E. 909; Williston on Contracts, § 15. For this reason it cannot properly be assumed that the document embodying the policy is invalid, and therefore argued that the incontestable clause has no effect on an action to reform the policy. It thus appears that throughout the 20 years after its execution the written policy had the full effect of a valid contract, and that it was this contract to which the incontestable clause refers.

"We believe this conclusion is supported by a consideration of the purposes for which incontestable clauses have been inserted in life insurance policies. It is generally agreed that the origin of the clause may be found in the competitive idea of offering to policyholders assurance that their dependents would be the recipients of a protective fund rather than a lawsuit. * * *

"Logically the coverage of this clause should extend to those defenses of the insurer which could be conceivably raised within the contractual period of contestability. * * * These inception defenses would include misrepresentation, fraud, breach of condition or warranty, mistake and lack of insurable interest. * * * If this seems harsh, it must be remembered that the insurer himself agreed not to raise these defenses as an inducement to prospective policyholders."

The Court further stated, 171 F.2d at page 702:

"It does not seem reasonable to bar the raising of fraud as a defense and at the same time allow the insurer to gain reformation for its own benefit on the ground of an alleged mistake of its own skilled employees."

Two United States Courts of Appeal are not in accord with the holding in the Richardson case. In the cases of Prudential Ins. Co. of America v. Strickland, 6 Cir., 1951, 187 F.2d 67, and Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 1929, 35 F.2d 571, 71 A.L.R. 128, it was held that the incontestable clause did not bar an action for the reformation of the policy because of mistake in the preparation of the policy.

In the case of Columbian Nat. Life Ins. Co. v. Black, supra, 35 F.2d at page 577, the Court stated:

"Both the policy applied for and the one issued provide, in substance, that 'after one year from date hereof this policy shall become incontestable,' save for nonpayment of premiums. It is claimed that this provision bars this action. The contention is not sound. This is not a contest of the policy, but a prayer to make a written instrument speak the real agreement of the parties. It would hardly be suggested that an assured, who brings an action to reform a policy and to recover under it as reformed, was contesting the policy within the meaning of this clause. Yet the clause is not one-sided, and the right of the assured to have the writing express the agreement actually made is no greater than the right of the assurer. * * * Without going at length into the purpose and history of the clause and without intimating that an actual contest may not be found under the cloak of reformation, we hold that an action to correct a purely clerical error in a policy issued, so that it will speak the truth as to the agreement of the parties, is not barred by the incontestable clause."

The case of Columbian Nat. Life Ins. Co. v. Black, supra, was the subject of comment in 30 Colum.L.Rev. 573 (1930) and 39 Yale L.J. 907 (1930).

The case of Richardson v. Travelers Ins. Co., supra, which, as noted, held that the incontestable clause barred an action for reformation based upon clerical error in the issuance of the policy, was the subject of widespread law review comment. 33 Minn.L.Rev. 784 (1949); 27 Texas L.Rev. 861 (1949); 24 Notre Dame Lawyer 535 (1949); 2 Okla.L.Rev. 371 (1949); 97 U.Pa.L.Rev. 741 (1949); 62 Harv.L.Rev. 890 (1949); 1949 Ill.Law Forum 534 (1949); 1949 Ins.Law J. 489 (1949); 2 Vand.L.Rev. 707 (1949); 47 Mich.L.Rev. 1023 (1949).

The comments recognized that the holding in the Richardson case was out of line with the holdings of other courts. The greater number of the comments are critical of the holding.

The state court decisions are practically unanimous to the effect that the incontestable clause in itself does not bar reformation based upon a clerical error in the preparation of the policy. Buck v. Equitable Life Assur. Soc. of United States, 1917, 96 Wash. 683, 165 P. 878; Mates v. Penn Mut. Life Ins. Co., 1944, 316 Mass. 303, 55 N.E.2d 770; Neary v. General American Life Ins. Co., 1942, 140 Neb. 756, 1 N.W.2d 908; Metropolitan Life Ins. Co. v. Henriksen, 1955, 6 Ill. App.2d 127, 126 N.E.2d 736. See Hibbard v. North American Life Ins. Co., 1927, 192 Wis. 315, 212 N.W. 779. In this last case there was a clerical error in the policy as to the amount of benefits. The insured was denied recovery of the erroneously stated benefits without reference to the matter of reformation. Several treatises state the rule to be that the incontestable clause does not bar the insurer's action to correct a clerical error. See, e. g., 1 Appleman, Insurance Law & Practice § 337 (1941); 29 Am. Jur., Insurance § 892 (1940); 45 C.J.S., Insurance, § 751, p. 769 (1946). See also annotation, 1949, 7 A.L.R.2d 504.

This Court is of the view that when the Iowa Supreme Court and the New Jersey Supreme Court have squarely presented to them for decision the question here involved the probabilities are that they would follow the overwhelming weight of authority and hold that the incontestable clause in itself does not bar an action by an insurer to correct a clerical error in the policy.

It is the holding of the Court that the incontestable clause in the policy in question does not bar the claim of the defendant for reformation.

An Order will be entered overruling the motion of the plaintiff to strike.