INDIANOLA COUNTRY CLUB, appellant, v. FIREMAN'S FUND INSURANCE COMPANY et al., appellees.

No. 49516.

(Reported in 92 N.W.2d 402)

OCTOBER 14, 1958.

Watson & Herrick, of Indianola, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellees.

LINNAN, J.—This was an action at law tried to the court without a jury upon stipulated facts against several fire insurance companies, all of which had issued to plaintiff fire insurance policies containing identical provisions covering the clubhouse building, its contents and fixtures, for the destruction of an underground electric cable which was struck by lightning. There was no dispute as to the amount of damages or that the policies were in full force and effect at the time of the loss. The whole dispute is as to the coverage of the policies. The trial court dismissed the petition and the plaintiff appealed.

The material facts are: The Indianola Country Club owns

a 40-acre square tract of land about one mile north of the City of Indianola. The clubhouse, which is a frame one-story building, is located in about the center of the area. The highway runs along the south side of the tract as does the electric transmission highline. Leading straight north from the highline toward the clubhouse for a distance of approximately 500 feet is an underground electric cable carrying a voltage of 7200 volts. At the north end it goes up a pole to a transformer where the voltage is reduced to 110 volts. This pole is some 40 to 50 feet from the clubhouse building and from the transformer three wires lead overhead across a parking lot to a meter, which is fastened to the wall of the clubhouse building, and from there the electricity is distributed to the clubhouse for its various uses such as lighting, electric motors, air-conditioning, refrigeration, etc.

On April 24, 1957, lightning struck at a point about midway between the transformer pole and the property line, destroying the underground electric cable, which had an agreed value of $741.82, for which recovery is sought.

The policies all contained a building coverage clause which provided as follows:

"BUILDING COVERAGE: When the insurance under this policy covers a building, such insurance shall cover on the building, including foundations (except as excluded below), plumbing, electric wiring, electric sound, communication, stationary heating, lighting, ventilating, refrigerating, air-conditioning and vacuum cleaning apparatus and fixtures, boilers, machinery used for the service of the building only, *all only while contained therein;*

"* * * also all permanent fixtures, stationary scales and elevators, *belonging to and constituting a permanent part of said building.*"

I. It is the contention of appellant that said underground electric cable was covered by the provisions of the policies either as electric wiring or as a permanent fixture. We are unable to find either position tenable.

As to the first position, the express terms of the policies limit the coverage of electric wiring to that contained only in

the building. This language is plain, simple and unambiguous, and cannot be construed to include an underground electric cable not even connected with the building but ending at the transformer on the pole some 40 to 50 feet outside the building.

However, appellant contends that even if it is excluded by the terms of the policies covering only electric wiring contained within the building, it is still covered by the provisions of the policies which cover permanent fixtures either within or without the building. However, this provision is also limited and covers only such permanent fixtures as are "belonging to and constituting a permanent part of said building."

II. We believe that appellant is confused in failing to distinguish what may be a fixture to the realty and a fixture to the building. The underground cable was undoubtedly installed and imbedded in the ground with the intention that it should remain there permanently. It was attached to the realty in such a way that it became a fixture to the realty and would pass by any conveyance of the realty as a part thereof. But the insurance policies did not cover the realty. They merely insured the building and its contents and its fixtures. The cable was not attached to the building and cannot be said to be a fixture to said building. The word "fixture" has a flexible meaning and must be construed in the light in which it was used. When the contracts were entered into with the insurance companies, the parties surely must have understood that what was being insured was the building and its fixtures only and not fixtures to the realty wholly disconnected from the clubhouse building.

III. It has been many times stated by this court that in the construction of insurance contracts the intention of the parties should control. The latest pronouncement appears in Sands v. Iowa Mutual Ins. Co., 244 Iowa 16, 19, 55 N.W.2d 572, 573, where this court said: "As with contracts generally, the cardinal principle in the construction of insurance contracts is that the intention of the parties should control." This same language was used in the opinion in the case of Iowa Electric Co. v. Home Ins. Co., 235 Iowa 672, 17 N.W.2d 414. In that case it was the contention of the insured that an electric hydrogenerator contained in a separate building some 24 feet from the main building, which was insured, was covered by this clause

in the insurance policy: "The term 'Building' shall be construed to cover the entire structure including all communicating and/or connected additions and attachments." (Page 673 of 235 Iowa) The trial court first submitted the question of coverage to the jury, but later after a jury verdict for the plaintiff set aside the verdict and in effect sustained defendant's motion for a directed verdict. The plaintiff's contention is summarized in the opinion (page 675) as follows:

"In general, plaintiff contends that as used in insurance policies, a communicating or connected addition need not be physically joined to the main building and that here the smaller building was such an addition to the larger because of their ownership, relative location, accessibility, adaptability, and use. Defendant contends, however, that the smaller building is not such an addition because it is not structurally connected with the main building and the parties did not intend the insurance to cover the property which was damaged."

The supreme court in sustaining the trial court said at page 678: "The only reasonable inference to be drawn from this testimony is that the parties did not intend the policy in suit to cover the property for which recovery is sought here. To allow recovery in the face of such undisputed testimony would involve a construction of the policy contrary to that intended by the parties and result in manifest injustice."

The language in the Sands case above cited is also quoted with approval in the case of Freestone v. Prudential Ins. Co. of America, 139 F. Supp. 665.

■ IV. It is also well settled that an insurance policy must be construed most favorably to the insured, and where it is susceptible to two constructions that construction should be placed upon the policy which is most favorable to the insured. However, that rule does not apply where the language of the policy is clear and unambiguous and the intention of the parties is plain. McCann v. Iowa Mutual Liability Ins. Co., 231 Iowa 509, 1 N.W.2d 682; Jones v. Continental Cas. Co., 189 Iowa 678, 179 N.W. 203, 18 A. L. R. 1329; Twogood v. American Farmers Mut. Auto. Ins. Assn., 229 Iowa 1133, 296 N.W. 239; Kantor v. New York Life Ins. Co., 219 Iowa 1005, 258 N.W. 759. This rule is aptly stated in the Twogood case where this court said

at page 1143 of 229 Iowa, page 244 of 296 N.W.: "Appellee contends for the general rule that a policy of insurance must be construed most favorably to the insured. This is true, but the rule applies only when there is a real ambiguity in the language of the policy. The meaning of the clause under consideration is clear and the intendment of the parties to the contract is plain. There is no room for judicial construction."

In the case of Hiatt v. Travelers Ins. Co., 197 Iowa 153, 197 N.W. 3, 4, 33 A. L. R. 655, there also appears an excellent statement of the general rule where at page 156 of the Iowa opinion the court said: "We are not unmindful of the rule of quite universal application that a policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity. If the language is, without violence, susceptible of two interpretations, that one which will sustain his claim and cover the loss must, in preference, be adopted over that construction which will prove fatal thereto. Such a rule, however, does not warrant an arbitrary judicial construction of the terms of the instrument, and a court is in duty bound to give effect to exceptions and limitations in a policy as they are written; and unless it may be said there is ambiguity in the words found in the policy, there is no occasion for the exercise of choice of interpretation."

We are unable to find any ambiguity whatsoever in the provisions of the policies involved in this action. The clause covering electric wiring is clearly and unmistakably limited to only such wiring as is contained within the building. The clause relating to permanent fixtures by the same plain and unambiguous language limits the coverage to permanent fixtures "belonging to and constituting a permanent part of said building."

As said by the trial court, "this court cannot by any stretch of the imagination bring itself to hold that the damage was to electric wiring contained in the building located thereon."

■ V. There is another rule of law or principle of construction that supports the position taken by the trial court and by this court, that is, the principle of expressio unius est exclusio alterius. The policies expressly covered the electric wiring contained within the building. Having thus limited the coverage of such wiring by implication, all wiring outside of the building

 7

would be excluded. It could well be argued that the electric cable was electric wiring, the same as the overhead wiring.

There was no damage to the clubhouse building, its electric wiring, or its fixtures, but the damage was confined to the cable beyond the transformer on the pole some 40 to 50 feet from the building. It is therefore the opinion of the court that the electric cable which was destroyed was not covered by the terms of the policies and that the action of the trial court in dismissing the petition was correct and should be affirmed.—Affirmed.

All JUSTICES concur.